## A01A0168. MERRITT v. THE STATE.
(548 SE2d 427)

JOHNSON, Presiding Judge.

A jury found Hope Merritt guilty of theft by taking. Merritt appeals, alleging the trial court erred by (1) failing to question each juror after the law clerk heard discussions about the case coming from the jury room before the close of evidence, (2) failing to permit him to cross-examine the victims about three lawsuits and judgments against them, and (3) denying his motion for new trial on the basis that the state withheld the case detective's supplemental report. Because each of these enumerations of error lacks merit, we affirm.

---

[8] See id.; *Attaway v. State*, 244 Ga. App. 5, 7 (534 SE2d 580) (2000).

Viewed in a light most favorable to support the jury's verdict, the evidence shows that the victims, Reginald and Constance Johnson, employed Merritt as their accountant in 1981. In 1991, Merritt suggested the Johnsons invest in a jumbo certificate of deposit with some of his other clients. He told the Johnsons that the certificate of deposit would result in an excellent return, but that there would be no paperwork with the Johnsons' name on it because of the nature of the investment. Over the next few years, the Johnsons gave Merritt between $200,000 and $250,000 to invest.

In 1995, the Johnsons attempted to collect their principal and interest from Merritt. By their calculations, the total amount should have exceeded $300,000. Merritt made a variety of excuses, but did not produce the money. He told the Johnsons they had to wait six months, then a year, before the money would be available. Merritt then stopped returning the Johnsons' phone calls.

Reginald Johnson tracked down Merritt as he was moving out of his office. Merritt told Johnson that he had invested the Johnsons' money in a brake shoe company, which the Johnsons never agreed to. Merritt then gave Johnson a copy of a stock certificate for that company, although no shares of stock were ever purchased for the Johnsons. The Johnsons never got their money back,[1] and Merritt never opened a certificate of deposit account.

The Johnsons contacted the police, who questioned Merritt. Merritt told the police that he had invested the Johnsons' money in the brake shoe company, but could not give police an address or the name of a contact person at the brake shoe company. Merritt did not deny that he had received the money and never claimed that the money had been loaned to him by the Johnsons. At trial, Merritt testified that the Johnsons gave him the money as a loan and that he promised to repay the loan with interest, but was unable to do so.

Evidence at trial refuted Merritt's claim. Merritt gave the Johnsons receipts, documenting withdrawals as "investment[s]" and "master C.D.," and gave the Johnsons a document entitled "Johnson Investment" which purported to record the money invested in the certificate of deposit. The state also introduced the brake shoe company stock certificate that Merritt gave to Johnson. This certificate was in Merritt's name and was dated 1988, before the Johnsons ever gave money to Merritt.

A similar transaction witness was also introduced at trial. This witness testified that he gave $40,000 to Merritt for investment pur-

---

[1] In 1993, Merritt returned $33,000 to the Johnsons so they could purchase a car. He also made one payment of $2,500 to the Johnsons.

poses, that he was told his money would be combined with that of other investors to maximize gains, that he received only two small interest payments, that Merritt never returned his phone calls, and that he lost all his money. This witness testified that the money he gave Merritt was not a loan.

Merritt claims the trial court erred in denying his motion for new trial on three different grounds. We find no basis for reversing the jury's verdict.

1. Merritt claims the trial court erred in failing to question each individual juror after the trial court's law clerk heard discussions apparently about the case coming from the jury room before the close of evidence. The record shows that midway through the first witness' testimony, the jurors had been in the jury room for only two to three minutes when the law clerk heard two phrases through the door: (1) "the State did . . ." and (2) "the evidence showed. . . ." The trial judge brought the jurors into the jury box and admonished them not to deliberate before the close of evidence. The admonishment was strongly worded and promptly delivered. Merritt asked for individual questioning of each juror, which the trial court denied.

We find no error. In the present case, the partial statements overheard by the law clerk were neutral as to the parties involved and did not indicate that there had been any extrajudicial influence. They in no way indicated that the speaker was biased toward the state. More importantly, the record indicates that the jurors had been in the jury room for only two to three minutes when the comments were made and the comments occurred during a break in the testimony of the very first witness in the case. Hence, the conversation was brief in duration and could have had little effect.

Contrary to Merritt's argument, *Huff v. State*[2] does not mandate that in every instance a trial court must question each juror individually whenever there is an allegation of misconduct. *Huff* merely held that individual questioning of jurors is an acceptable means of rebutting a presumption of harm.[3] In order to upset a jury verdict because of juror misconduct, the jurors' statements must be "so prejudicial that the verdict must be deemed inherently lacking in due process."[4] There must be a reasonable probability that the misconduct contributed to the conviction.[5]

We cannot conclude that any alleged juror misconduct in this case was so prejudicial as to deny due process to Merritt. While the

---

[2] 239 Ga. App. 83 (519 SE2d 263) (1999).
[3] Id. at 88 (3).
[4] (Citations and punctuation omitted.) *Bobo v. State*, 254 Ga. 146 (1) (327 SE2d 208) (1985).
[5] Id.

jurors may have been prematurely discussing the case during the testimony of the first witness, there is no evidence that any juror expressed an opinion that Merritt was guilty, and there is no evidence that any juror presented extrajudicial information to other jurors or tried to persuade other jurors as to any issue or testimony. The law clerk promptly brought the misconduct to the judge's attention, and the judge immediately admonished the jurors and gave them curative instructions. Under these circumstances, we find that the alleged juror misconduct, if it was misconduct, was not so prejudicial as to have contributed to the conviction. The trial court did not abuse its discretion.

2. Merritt contends the trial court erred in not admitting into evidence three civil judgments entered against the Johnsons. The record shows that these civil judgments arose from a failed business venture and were completely unrelated to the present case.

Clearly, when civil lawsuits are pending between parties and witnesses in a criminal case, that fact is relevant at the criminal trial to show the possibility of interest or bias between those parties.[6] However, the lawsuits in question did not involve either Merritt or any trial witness. Merritt failed to show that the jury would have gained any relevant insight into the motives of the victims from the introduction of the disputed evidence.

Merritt argues that the Johnsons loaned him the money to keep it out of their creditors' reach, and thus the jury needed to know about the civil judgments. Not only does the evidence contradict his contention that the money was a loan, but there is no evidence that the existence of the civil judgments against them would have made the Johnsons loan money to Merritt. In fact, the investment proposed by Merritt would serve to protect the Johnsons from their creditors just as well as a loan. The certificate of deposit was purchased in a group name, so there was no paper trail. Moreover, investing in a certificate of deposit entails considerably less risk than loaning money to an individual, and with the pending civil judgments, it is not likely that the Johnsons would have wanted to risk losing any money.

It is well established that the scope of cross-examination lies within the sound discretion of the trial court, and the trial court's discretion will not be disturbed on appeal unless manifestly abused.[7] The court may exercise its sound discretion in requiring counsel to make the relevancy of the questions apparent.[8] Here, Merritt failed to make the relevancy of the civil lawsuits apparent. His unsup-

---

[6] See *Boggs v. State*, 195 Ga. App. 605 (394 SE2d 401) (1990).
[7] See *Yarbrough v. State*, 241 Ga. App. 777, 782 (5) (527 SE2d 628) (2000).
[8] *Calloway v. State*, 199 Ga. App. 272, 274 (5) (404 SE2d 811) (1991).

ported allegations and assumptions do not require the trial court to find the civil lawsuits relevant. The trial court did not abuse its discretion by finding testimony concerning the civil lawsuits irrelevant and inadmissible.

3. Merritt contends the trial court erred in failing to grant his motion for a new trial because the state violated *Brady v. Maryland*[9] by withholding the case detective's supplemental report. According to Merritt, this supplemental report contradicted the victims' testimony on the issue of venue and impeached the credibility of the victims. We disagree and find no *Brady* violation.

In order to establish a due process violation due to the state's failure to provide exculpatory material, Merritt must show that the evidence withheld from him so impaired his defense that he was denied a fair trial within the meaning of the *Brady* rule.[10] Specifically, he must show the following:

> (1) that the State possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.[11]

Merritt has failed to carry his burden of showing a *Brady* violation under this standard.

The evidence at trial showed that on November 9, 1993, Merritt came to the Johnsons' home in DeKalb County and the Johnsons gave Merritt a check for $50,000 to be invested in the certificate of deposit. Both Reginald and Constance Johnson, as well as another witness who was present at the Johnsons' home, confirmed this transaction and specifically testified that the money was expressly given for investment purposes, not as a loan. Reginald Johnson further testified that this was the only money given to Merritt in DeKalb County. This evidence was used to establish venue in DeKalb County. Merritt denied receiving any check in DeKalb County, thus contesting venue.

The detective's supplemental report at issue does not mention the $50,000 check and states that Johnson told the detective "around half of the funds" were given to Merritt in DeKalb County. At trial,

---

[9] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[10] *Smith v. State*, 234 Ga. App. 586, 591 (4) (506 SE2d 406) (1998).

[11] (Citations omitted.) *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994); *Ramsay v. State*, 220 Ga. App. 618, 624 (6) (469 SE2d 814) (1996).

the detective testified that the Johnsons did not mention the November 9 payment when he spoke with them. On cross-examination, he stated that the Johnsons told him how much money was stolen, but did not specifically tell him about the November 9 payment. Contrary to Merritt's assertion, there is no contradiction in the evidence simply because the report does not mention the November 9 payment. The report was not inconsistent with the trial testimony.

Moreover, while there may be a contradiction regarding the amount of money paid to Merritt in DeKalb County, there was evidence at trial that at least some money was paid in DeKalb County, thus establishing venue. The report is not exculpatory because it states that more money than that testified to at trial was paid to Merritt in DeKalb County. In addition, it is unclear from the trial evidence whether this statement is inconsistent with the testimony at trial. While Constance Johnson did agree on cross-examination that the November 17[12] payment was the only payment made in DeKalb County, she had previously testified and told the detective that she made several payments to Merritt both at his office in Fulton County and at her home in DeKalb County. Thus, the jury was authorized to infer that the Johnsons actually gave Merritt more than $50,000 in DeKalb County.

Nothing in the record indicates that the report would have been beneficial to Merritt. Any assertion that the report contained exculpatory evidence that would have affected the outcome of the trial is mere speculation which is unsupported by the record and fails to satisfy Merritt's burden to establish a *Brady* violation.[13] Furthermore, "[a] *Brady* violation does not exist where the information sought by the defendant becomes available at trial."[14] Here, the evidence about which Merritt complains came out during trial, rendering his *Brady* challenge meritless.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 21, 2001 — 

*Finestone & Morris, Bruce H. Morris, Mark J. Kadish*, for appellant.

*J. Tom Morgan, District Attorney, Kristin L. Wood, Jeanne M. Canavan, Assistant District Attorneys*, for appellee.

---

[12] This is clearly the wrong date based on the evidence.

[13] See *Smith*, supra at 591 (4) (a).

[14] (Citations and punctuation omitted.) *Johnson v. State*, 244 Ga. App. 128, 133 (2) (534 SE2d 480) (2000).