## S10A1559. CRAWFORD v. THE STATE.

(704 SE2d 772)

HUNSTEIN, Chief Justice.

Roy Crawford was convicted of murder in the drowning death of Seliqueka Curry. He appeals from the denial of his motion for new trial,[1] challenging the admission of his statement to police officers and the trial court's failure to give certain charges. Finding no error, we affirm.

1. The evidence adduced at trial authorized the jury to find that, on the morning of the murder, appellant was outside the apartment where his brother-in-law, James Williams, lived.[2] The teenaged victim, her mother (who was Williams's girlfriend) and Williams's teenaged son, Je'Vaun White, also lived in the apartment but on this morning the victim was the only one inside after White left for school. As White was walking to catch the bus, appellant questioned him about who was still inside; appellant specifically asked whether the victim was there. After obtaining answers to his questions, appellant seemed to drive away but White, while sitting in the bus, spotted appellant driving back into the apartment complex. When White returned from school that afternoon, he found the victim's nude body face down in water in the bathtub; the bottom of the back patio door appeared to be kicked in. Appellant's former stepdaughter testified that, when she told appellant the victim was dead, appellant's response was to ask "was she naked." Appellant's former wife testified that appellant had previously made inappropriate comments about the victim and, when informed her body had been found, responded by saying that "somebody probably kicked the door

---

[1] The murder occurred on November 16, 2005. Crawford was indicted January 13, 2006 in Douglas County. He was found guilty on November 4, 2008 and was sentenced that same day to life in prison. His motion for new trial, filed November 7, 2008, was denied as amended on April 14, 2010. A notice of appeal was filed May 5, 2010. The appeal was docketed for the September 2010 term in this Court and was submitted for decision on the briefs.

[2] Appellant had only been married to Williams's sister for a few years and she had filed for a divorce from appellant mere days before the murder.

in." When questioned by police officers, appellant initially denied being in the victim's apartment the day of the murder but then changed his account to say he had been there. After his arrest, a stain that was later determined to be blood from the victim was found on the mid to upper thigh area of the inside of appellant's left pants leg. The medical evidence established that the victim died from drowning, which was complicated by blunt force injuries to the head and strangulation injuries. The medical examiner testified that, had the victim not been placed in the bathtub water, it was "a distinct possibility" she would have survived being beaten and choked.

The evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the murder of Seliqueka Curry. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred by denying his motion to suppress his statement to police officers.

(a) Appellant first argues that the trial court erred by finding appellant was not in custody when the statement was made.

[T]he determination of whether one is in custody depends upon the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer. . . . [T]he relevant inquiry in determining whether one is in custody is how a reasonable person in the suspect's position would perceive his or her situation.

(Footnote omitted.) *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998). The trial court, in making its factual determination that appellant was not in custody, expressly relied on its observation of the two DVDs onto which appellant's questioning was recorded[3] in addition to the testimony given by one of the interrogating officers, Investigator Sweat, at the hearing conducted pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). The appellate record contains no transcription of appellant's interview as recorded on the DVDs[4] and appellant failed to make application for the transmission of the DVDs to this Court. See Supreme Court Rule 71 (1). Moreover, in arguing this enumeration in his brief to this

---

[3] The trial court stated:
I do not find that the investigator did anything that made [appellant] think he was under arrest. And, in fact, [appellant's] demeanor when Investigator Sweat decided to arrest him was that he was shocked, and he said, "What are you arresting me for?"

[4] The trial transcript reflects that the DVDs, with certain agreed-upon redactions, were played for the jury.

Court, appellant deliberately chose not to rely on any material set forth in the DVDs but rather based his contentions solely on the *Jackson-Denno* testimony of Investigator Sweat. Under these circumstances, we decline to exercise our discretion to order the trial court to transmit the DVDs to this Court. Compare *Robinson v. State*, 272 Ga. 752, 756, n. 5 (533 SE2d 718) (2000).

> An appellant has the burden of proving trial court error by the appellate record, and must compile a complete record of what transpired in the trial court. Otherwise, there is not sufficient information for an appellate court's review and the trial court ruling enumerated as error must be upheld. "(W)hen a portion of the evidence . . . bearing upon the issues raised by the enumerations of error is not brought up in the appellate record so that this court can make its determination from a consideration of it all, an affirmance as to that issue must result."

(Footnotes omitted.) *Ware v. State*, 279 Ga. 17, 18 (2) (608 SE2d 643) (2005). In this case, because appellant has failed to compile a record that demonstrates all that transpired in the trial court with regard to his suppression motion, we must presume that the evidence before the court supported its decision to deny the motion. Id.

Moreover, even looking solely to the testimony by Investigator Sweat adduced at the *Jackson-Denno* hearing, the trial court did not err when it determined, under the objective circumstances attending the police officers' interrogation of appellant, see *Hardin v. State*, supra, 269 Ga. at 3, that a reasonable person in appellant's position would not have understood himself to be in custody at the time he gave his statements to the officers.[5] See generally *Sewell v. State*, 283 Ga. 558 (2) (662 SE2d 537) (2008) (clearly erroneous standard applies to trial court's factual findings regarding whether defendant was in custody at time statements were made).

---

[5] Investigator Sweat testified: appellant came to the sheriff's department in his own vehicle accompanied by his then-wife and voluntarily agreed to speak with officers. Appellant was not handcuffed, threatened or coerced. "About halfway through" the interview when appellant questioned Sweat about whether he needed an attorney, see Division 2 (c), Sweat "took the opportunity to go ahead and read" appellant his *Miranda* rights but appellant was not under arrest at that time and he continued speaking with Sweat freely and voluntarily after being informed of his rights. Although appellant at some point during the interview admitted that, apparently on the day of the murder, he had put gasoline in his vehicle and then driven off without paying, the trial court did not clearly err by believing Sweat's testimony that he (Sweat) would possibly have allowed appellant to leave notwithstanding the gas theft admission and that appellant "was free to leave the station up until I placed him under arrest" at the end of the interview. See generally *Sosniak v. State*, 287 Ga. 279 (1) (695 SE2d 604) (2010) (trial court's findings as to credibility relating to admissibility of a defendant's statements upheld on appeal unless clearly erroneous).

(b) Contrary to appellant's argument, his refusal to sign the *Miranda* waiver form did not automatically render his statement involuntary and inadmissible. See *Humphreys v. State*, 287 Ga. 63 (6) (694 SE2d 316) (2010).

(c) Appellant contends that the trial court erred when it determined that appellant did not make an unambiguous request for counsel so as to mandate cessation of the police officers' questioning. According to Investigator Sweat, appellant asked the interrogating officers if he (appellant) needed an attorney; Sweat responded "something to the effect of I can't tell you whether you need a lawyer or not, that's up to you"; and that Sweat then read appellant his *Miranda* rights, after which appellant voluntarily agreed to continue talking to the officers. Here, neither appellant's question nor the circumstances apparently surrounding the question[6] suggested a request for an attorney. See *Byrd v. State*, 261 Ga. 202 (2) (403 SE2d 38) (1991). The trial court correctly concluded that appellant's question to the officers did not rise to the level of an equivocal request for counsel. Id.

3. (a) Appellant's contentions that the trial court erred by failing to instruct the jury on *Miranda* and the defense of accident are waived for lack of a timely request or proper objection and there is no plain error. See *Moon v. State*, 253 Ga. 74 (3) (316 SE2d 464) (1984); OCGA § 17-8-58 (a).

(b) Appellant requested a charge on voluntary manslaughter and properly objected to the trial court's refusal to give the requested charge. However, it is not error to refuse to give a requested charge when there is no evidence to support it. *Heyward v. State*, 278 Ga. 342 (2) (602 SE2d 831) (2004). See also *Hunter v. State*, 281 Ga. 693 (3) (642 SE2d 668) (2007) (whether there is any evidence to support a finding of voluntary manslaughter is a question of law). Appellant points to testimony by Johnny Veal, his jailhouse cellmate, regarding what appellant told Veal about the events, namely, that appellant became angry upon discovering the teenaged victim on the telephone with her ex-boyfriend; appellant tried to take the phone from her over her resistance; and, to stop her from hitting him, he grabbed and then choked her until she went limp. Appellant argues that this evidence showed he "snapped" because the teenager was "speaking to a rival for her affections." Pretermitting the impact on appellant's argument of the evidence that appellant then moved the body to the bathroom, filled the tub with water and put her face down in it, a

---

[6] As discussed earlier, see Division 2 (a), supra, appellant failed to provide this Court with a copy of the DVDs or a transcript of the actual questioning; we rely instead upon the testimony of the interrogating officer at the *Jackson-Denno* hearing.

review of the trial transcript reveals that there was no evidence that appellant and the victim were actually involved in any type of romantic relationship.[7] To the contrary, the evidence showed that appellant had never been alone with the victim and, at best, could have had only the occasional, casual conversation with her in a family setting, making them, as the trial court noted, "near strangers."

Voluntary manslaughter occurs when a person "causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). While adulterous conduct can be the provocation sufficient to warrant a conviction for manslaughter, *Strickland v. State*, 257 Ga. 230 (2) (357 SE2d 85) (1987), and such conduct can supply the required provocation even if the defendant and the victim are not married, *Goforth v. State*, 271 Ga. 700 (1) (523 SE2d 868) (1999), in the absence of *any* evidence of a romantic relationship between appellant and the teenaged victim, there could be no "serious provocation" created by the victim's call to her ex-boyfriend that could have aroused "passion in a reasonable person." OCGA § 16-5-2 (a). The trial court did not err by refusing to give the requested charge. See generally *Taylor v. State*, 282 Ga. 502 (2) (651 SE2d 715) (2007).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 2011.

*Joseph S. Key*, for appellant.
*David McDade, District Attorney, James A. Dooley, James E. Barker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.

---

[7] Veal acknowledged in his testimony that appellant "really didn't say" that appellant had "any kind of a previous relationship with" the victim, only that it "sounded" like appellant did.