**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**August 31, 2012**

# In the Court of Appeals of Georgia

A12A1648. WHITE v. THE STATE.

MIKELL, Presiding Judge.

Following a stipulated bench trial, Zione Cortes White appeals, contending that the trial court erred in denying his motion to suppress cocaine found following a traffic stop.

> In reviewing a trial court's ruling denying a motion to suppress . . . , the following three principles apply: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Because there was

testimonial evidence in this case, we do not apply a de novo standard of review.[1]

Here, there were disputes as to the facts and credibility. Therefore, we view the evidence in favor of the trial court's findings. So viewed, the evidence showed that, on August 9, 2011, Gwinnett County Police Officer Jones, assigned to the highway interdiction team under the Narcotics Unit, was on patrol on Interstate 85 in north Gwinnett County shortly after 10:00 p.m. Jones noticed that the car in front of him crossed over the center line and that the center brake light in the rear window was not functioning. Following a traffic stop, Jones found White driving and a woman in the front passenger seat. It took White an extended period of time to locate his documents and Jones noticed that his hands were visibly shaking. Jones also noticed a strong overwhelming smell of air freshener which, in his experience, was sometimes used to mask the odor of narcotics. Jones asked White to step to the rear of his patrol car so that he could issue him a warning citation for the brake light.[2] At that time, Jones

---

[1] E.g., (Punctuation and footnotes omitted; emphasis supplied.) *Ware v. State*, 309 Ga. App. 426, 426 (710 SE2d 627) (2011). Accord *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[2] A verbal warning was given for crossing the lane line.

2

asked White if he could conduct a pat down search of him and White agreed. Jones found a bulge in White's rear pocket and asked him what it was. White said that it was $700 in cash. Jones continued to ask White questions as he wrote the warning, including where he had been and who was in the car. White said that he and Hoover, his girlfriend, had been to Atlanta to visit her aunt. Although he said they visited her regularly, he could not give an address or location of her residence. In running White's South Carolina driving history, Jones had noticed some license suspensions. He asked White if he had ever been arrested for any narcotics violations and White stated that he had been arrested for marijuana possession in the past. White became visibly nervous and started to move around. Jones went to the front of White's car to verify the VIN and engaged Hoover in conversation as he was doing so. Asked about the purpose of their trip, Hoover responded that they had been to a mall in Atlanta, although she could not name the mall or describe its location. Jones returned to his patrol car and gave White his documents and warning citation. At this point, Jones asked White if he could search his car and White said "yes." Jones requested another officer to respond and Officer Kissel arrived within five minutes. Jones asked Kissel to get Hoover out of the car and then asked White again, in front of Kissel, "[i]t's okay for me to search the car?" White shook his head and said yes. In the glove box,

3

Jones found a grocery bag containing seven clear baggies which contained approximately 200 to 250 grams of cocaine.

White testified and denied that he consented to the search.[3] He said that Jones obtained his car keys and searched his trunk before Kissel arrived. White denied being asked a second time to consent to the search.

The trial court's findings based on disputed facts and credibility are not clearly erroneous.

1. White contends that there was no probable cause for the initial stop of his car by Jones.

Jones stopped White because he observed White's car cross over the lane line without a signal and that the third brake light was not working. The argument made here that OCGA § 40-8-25 only requires two brake lights to be functioning was not

---

[3] White also testified, however, that he did not say anything when Jones opened his trunk "because I gave consent to search and I felt like it was nothing I could really do, you know, being police officers."

made below and will not be considered here for the first time.[4] Moreover, even if the issue were properly before us, it would be without merit.[5]

Further, the argument based on the fact that Jones acknowledged that he did not stop every car he observed cross a line or with a broken brake light is also unavailing. "[W]hen an officer observes a traffic offense, the resulting traffic stop does not violate the Fourth Amendment 'even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances.'"[6]

Therefore, the trial court's finding that the traffic stop was based on probable cause that a traffic violation had occurred was not clearly erroneous.

2. White also argues that he was illegally detained beyond the time of the traffic stop and, therefore, his consent to search was not valid.

---

[4] *Boykins v. State*, 298 Ga. App. 654 (1) (680 SE2d 665) (2009).

[5] *Lancaster v. State*, 261 Ga. App. 348, 350 (1) (582 SE2d 513) (2003) ("If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute.")

[6] (Footnote omitted.) *Hammont v. State*, supra at 397.

Jones' testimony, however, was that his questioning of White and Hoover took place during the time he was conducting his investigation of the traffic violations and writing the warning for the inoperable brake light. Further, upon handing the warning to White, he immediately asked for consent to search and White gave it.

"We have held that, where an officer requests consent to search contemporaneously, or nearly so, with the moment the purpose of a traffic stop is fulfilled, a trial court is authorized to conclude that the request did not unreasonably prolong the detention."[7] Viewed most favorably to support the judgment, the evidence showed that White was legally detained when Jones requested consent to search.[8]

Also, White's argument that an officer may not engage in questioning which is unrelated to the traffic stop during the stop is without merit.

> [E]ven when there is no basis for an officer to suspect that a person detained at a traffic stop is engaged in criminal activity unrelated to the stop, 'police may lawfully ask questions during the course of the stop about such unrelated activity, so long as the questioning does not

---

[7] (Citation and punctuation omitted.) *Nix v. State*, 312 Ga. App. 43, 46 (3) (717 SE2d 550) (2011).

[8] Id.

prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop.'[9]

Therefore, the trial court's judgment is affirmed.

*Judgment affirmed. Miller and Ray, JJ., concur.*

---

[9] (Footnote omitted.) *Hammont,* supra at 397-398.