**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1231. TOBIAS v. THE STATE.

RAY, Judge.

Following a jury trial, Nancy Rawlins Tobias was convicted of homicide by vehicle in the second degree,[1] failure to yield right of way,[2] and driving with an expired tag.[3] After a hearing, the trial court denied Tobias' motion for new trial. Tobias appeals, contending that the trial court erred in denying: (1) her motion to suppress statements; (2) her motion to sever; (3) her motion for mistrial based on error in administering the juror's oath; and (4) her motion for mistrial based on a juror's question in open court. Tobias also contends that the trial court erred in failing

---

[1] OCGA § 40-6-393 (c).

[2] OCGA § 40-6-71.

[3] OCGA § 40-2-8.

to take testimony at sentencing regarding her ability to pay restitution. Finding no error, we affirm.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Tobias] no longer enjoys a presumption of innocence. In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt.[4]

So viewed, the evidence shows that, on April 28, 2009, Tobias was driving a Toyota Tacoma truck northbound along Highway 75 in Towns County. As she was attempting to make a left turn onto Highway 180, she turned in front of a motorcycle that was traveling southbound on Highway 75. The motorcycle and its driver, James Beaman, collided with the passenger side of the truck. Beaman died at the scene from the injuries he sustained in the collision.

Shortly after the accident, Tobias was escorted by emergency medical personnel to a nearby house to be treated for shock. Tobias remained in the residence until law enforcement had an opportunity to speak with her regarding details of the

---

[4] (Citation omitted.) Nelson v. State, ___ Ga. App. ___ (731 SE2d 770) (2012).

accident. Approximately one hour after the accident, Corporal Jonathon Barrett with the Georgia State Patrol arrived on the scene as the lead investigator and began speaking with other law enforcement and medical personnel who were present. Corporal Barrett testified that the roadway evidence was "pretty overwhelming" and that "it was a fairly easy crash to see what happened." He further testified that his initial investigation indicated that the driver of the truck was "going to be at fault for turning left in front of the motorcycle." Corporal Barrett spent approximately 45 minutes investigating the accident.

He then entered the residence where Tobias was receiving treatment and began asking her what happened in the crash. He did not physically place her under arrest or tell her that she would be arrested at that time. Tobias told Corporal Barrett that she was traveling northbound on Highway 75 and was turning left onto Highway 180 when the crash occurred. Corporal Barrett then advised Tobias that there was no insurance on the vehicle and that the tag was expired and asked her if she was aware of those facts, and she indicated that she was. After speaking with Tobias, Corporal Barrett told her that she would be charged and advised what the charges would be, then placed her under arrest and advised her of her rights under *Miranda v. Arizona*.[5]

---

[5] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

1. With regard to the denial of her motion to suppress, Tobias claims that the trial court erred in finding that she was not in custody at the time she made the statements to Corporal Barrett prior to being advised of her Miranda rights. Specifically, Tobias contends that she had been detained by law enforcement for approximately two hours after the accident and then questioned in an isolated and police-dominated atmosphere. Under these circumstances, she contends that a reasonable person would not have felt free to leave during questioning and would not have believed that her detention during the investigation was only temporary.

The issue of whether a person is in custody for *Miranda* purposes is a "mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous."[6]

> A person is considered to be in custody and Miranda warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that [she] was in custody, Miranda

---

[6] (Citation and punctuation omitted.) *DiMauro v. State*, 310 Ga. App. 526, 528 (1) (714 SE2d 105) (2011).

warnings are not necessary. Thus, the relative inquiry is how a reasonable person in [Tobias]'s position would perceive [her] situation.[7]

In other words, the proper inquiry focuses upon "the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer."[8]

The trial court conducted a *Jackson-Denno*[9] hearing prior to trial. The testimony presented several inconsistencies regarding the circumstances surrounding the questioning. Corporal Barrett testified that Tobias had been "detained" at the scene "just like any driver in any crash is detained and they have an obligation to stay and report to law enforcement what happened in the crash." However, another officer, Deputy Mike Davis, testified that Tobias was free to leave during this investigation. Tobias testified that, after she was escorted by medical personnel to a nearby residence to be treated for shock, she was told by a law enforcement officer that "a State Patrolman was on his way to the scene and that he would determine the course

---

[7] (Citations and punctuation omitted.) *State v. Folsom*, 285 Ga. 11, 12-13 (1) (673 SE2d 210) (2009).

[8] (Citation omitted.) *Crawford v. State*, 288 Ga. 425, 426 (2) (704 SE2d 772) (2011).

[9] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

of action from there." Tobias further testified that she felt like she was not free to leave the scene, even though she had not been told that she could not do so. Corporal Barrett testified that Tobias was not under arrest at the time he questioned her about the details of the accident, but he acknowledged that he had already determined that Tobias was going to be arrested. Corporal Barrett further testified that Deputy Davis was the only other law enforcement officer present when he spoke to Tobias. However, Tobias testified that there were three uniformed officers with Corporal Barrett when she was questioned. At the conclusion of the hearing, the trial court found that Tobias was not in custody at the time she gave her statements to Corporal Barrett prior to being advised of her *Miranda* rights.

> In reviewing a trial court's ruling denying a motion to suppress, the following three principles apply: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Because there was

6

testimonial evidence in this case, we do not apply a de novo standard of review.[10]

Furthermore, a trial judge at a motion to suppress hearing is under no obligation to believe a witness, even in the absence of contradictory testimony. The trial judge "may accept part of a witness' testimony and reject another part."[11]

Viewed in a light most favorable to the trial court's judgment, the evidence shows that Tobias had been escorted to a nearby residence by emergency medical personnel, not law enforcement, to receive treatment for shock after the accident. Moreover, as Tobias was involved in a motor vehicle collision involving a fatality, she was legally obligated to remain at the scene to provide details of the accident to the investigating officer.[12] It is well-settled that a police officer has the right to detain an individual involved in an automobile accident to conduct an investigation into the circumstances surrounding the accident, and such detention does not normally trigger

---

[10] (Punctuation and footnote omitted.) *White v. State*, ___ Ga. App. ___ (732 SE2d 107) (2012).

[11] (Citation and punctuation omitted.) *State v. Lynch*, 286 Ga. 98, 101 (1) (686 SE2d 244) (2009).

[12] OCGA § 40-6-270 (a). See generally *Ayres v. State*, 259 Ga. App. 290, 292 (1) (576 SE2d 597) (2003).

7

the protections of Miranda.[13] The record shows that it took Corporal Barrett approximately one hour to arrive at the accident scene, during which time Tobias received medical treatment for symptoms of shock. After arriving on the scene, Corporal Barrett spent approximately 45 minutes investigating the accident before speaking with Tobias. This Court has identified no particular length of time in which a temporary detention must be considered "unreasonable."[14] Under the circumstances presented in this case, we cannot say that the time period between the accident and Tobias's questioning was an unreasonable detention.

Further, Tobias was not isolated in a police-dominated atmosphere while she remained in the residence. She was accompanied by her mother and her aunt, who were also present during her interview with the police. Furthermore, the fact that "all

---

[13] *Gilmore v. State*, 242 Ga. App. 470, 471 (2) (530 SE2d 221) (2000); *Gunn v. State*, 236 Ga. App. 901, 902 (1) (514 SE2d 77) (1999); *Morrissette v. State*, 229 Ga. App. 420, 422 (1) (a) (494 SE2d 8) (1997).

[14] See *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000) (where evidence showed that the length of time from the traffic stop to the arrival of the investigating officer was approximately one hour, the temporary detention of defendant pending completion of the investigation was not unreasonable. Although the defendant was not free to leave the scene, he was allowed to walk around). Accord *Aldridge v. State*, 237 Ga. App. 209, 213 (3) (515 SE2d 397) (1999) (a wait of 45 to 50 minutes from the time of the traffic stop to the commencement of the investigation did not convert the investigation into a custodial situation).

8

of Towns County" was present at the accident scene did not constitute a "police-dominated" atmosphere during her questioning. The record shows that Tobias was not outside at the accident scene with the law enforcement and emergency response personnel, she had been taken inside a nearby residence to be treated for shock, where she remained with her mother and her aunt until Corporal Barrett had an opportunity to speak with her.[15]

There was no evidence that Tobias had been placed under formal arrest or restrained to the degree associated with a formal arrest at the time she gave her statements to Corporal Barrett. Although the record indicates that Corporal Barrett intended to arrest her on charges stemming from the accident, there is no evidence in the record that Tobias had actually been informed that she was going to be placed under arrest until after Corporal Barrett had questioned her about the accident.[16] We

---

[15] See *Sosniak v. State*, 287 Ga 279, 280-282 (1) (A) (1) (695 SE2d 604) (2010) (defendant was not deemed to be in custody for Miranda purposes where defendant was handcuffed, placed in patrol car, and taken to Sheriff's office for questioning. The defendant's handcuffs were removed upon his arrival at the Sheriff's office, he was not physically restrained or told that he was not free to leave, and he consented to informal questioning).

[16] See generally *Morrissette*, supra at 422 (1) (a) (where police officer testified that he strongly suspected that the defendant was intoxicated and, therefore, could have arrested him before administering field sobriety tests, his temporary detention of the defendant for further on-the-scene investigation of the automobile accident did

9

have held that "a custodial situation does not arise even if an officer believes he has probable cause to arrest a defendant, where the officer takes no overt step to communicate that belief."[17]

Under the totality of the circumstances here, the trial court was authorized to conclude that Tobias was not in custody when she was questioned because a reasonable person would not have felt that she was under a formal arrest, but would have understood that she could not simply leave the scene of such a serious accident before speaking with the police.[18]

2. Tobias next contends that the trial court erred in denying her motion to sever the charge of driving with an expired tag from the remaining charges of homicide by vehicle and failure to yield right of way at trial.[19] We disagree.

---

not render the defendant "in custody" for Miranda purposes).

[17] (Punctuation omitted.) *State v. Pierce*, 266 Ga. App. 233, 235 (1) (596 SE2d 725) (2004).

[18] See generally *Evans v. State*, 234 Ga. App. 337, 338 (1) (506 SE2d 681) (1998) (defendant who was asked to remain on scene during officer's investigation of vehicle accident involving injuries was not deemed to be in custody during subsequent field sobriety tests).

[19] Tobias had been charged by indictment with one count of homicide by vehicle in the second degree, one count of failure to yield right of way, one count of no proof of insurance, and one count of driving with an expired tag. Prior to trial, the

[W]here the joinder [of offenses] is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique. A trial court does not abuse its discretion in denying a severance of counts where evidence of one charge would be admissible in the trial of another.[20]

"Acts and circumstances forming a part . . . of the main transaction are admissible as res gestae, and . . . [e]very aspect of the criminal transaction relevant to the crime charged may be presented at trial, even if the defendant's character is incidentally placed in issue."[21] Here, the offense of driving with an expired tag was connected to and a part of the immediate circumstances of the vehicle collision at issue in this case and was, therefore, admissible.

Where a joinder of offenses is based upon a series of acts involved in a single transaction, severance lies within the sound discretion of the trial court, who must consider "whether in view of the number of offenses charged and the complexity of

---

State announced that it would not be going forward on the charge of no proof of insurance, but would be proceeding on the remaining three counts.

[20] (Citations and punctuation omitted.) *Carruth v. State*, 290 Ga. 342, 346 (4) (721 SE2d 80) (2012).

[21] (Citations and punctuation omitted.) *Moore v. State*, 242 Ga. App. 208, 211 (3) (529 SE2d 210) (2000).

the evidence to be offered, the triers of fact will be able to distinguish the evidence and apply the law intelligently to each offense."[22] Tobias, however, makes no argument as to whether the failure to sever prevented or hindered the jury from distinguishing the evidence or intelligently applying the law to each offense. Furthermore, Tobias stipulated at trial that she was operating her vehicle with an expired tag at the time of the accident. Accordingly, we find that the trial court did not abuse its discretion in denying the motion.

3. Tobias contends that the trial court erred in denying her motion for mistrial after the court clerk, during the administration of the jurors' oath,[23] mistakenly included the withdrawn charge of no proof of insurance while reading the list of charges contained in the indictment.[24] Tobias contends that the reference to the no proof of insurance charge was prejudicial. This argument lacks merit.

---

[22] (Citation and punctuation omitted.) *Abernathy v. State*, 191 Ga. App. 350, 350 (1) (381 SE2d 537) (1989).

[23] OCGA § 15-12-139.

[24] The exact words that the clerk used are not in the record, as the jurors' oath was not transcribed.

This is not a case where there has been a complete failure to administer the mandatory oath to the jury, which would require the conviction to be set aside.[25] Here, Tobias alleges that the clerk made an error in reciting the withdrawn charge to the jury during the oath. While there appear to be no cases directly on point, we have previously held that a trial court did not abuse its discretion in giving a curative instruction instead of granting a motion for mistrial when the trial court, while swearing in the jury, inadvertently mentioned a second indictment against the defendant charging him with another offense that was to be tried separately.[26] When a defendant's character has been impermissibly placed in issue in this manner, the decision to give a curative instruction rather than grant a mistrial lies within the sound discretion of the trial court.[27]

Here, the trial court gave a curative instruction to the jury, as crafted and requested by defense counsel, immediately following the administration of the jurors' oath. In its curative instruction, the trial court stated that "language from the indictment has been read to you by the Clerk of Court regarding no proof of

---

[25] *Spencer v. State*, 281 Ga. 533, 534 (640 SE2d 267) (2007).

[26] *Hubbard v. State*, 210 Ga. App. 141, 144-145 (3) (435 SE2d 709) (1993).

[27] Id. at 145 (3).

13

insurance. That charge has been dismissed by the State and is not for your consideration in this case." Further, Tobias cannot prove that such a reference harmed her defense, as the record indicates that the trial court was going to allow the State to elicit testimony from Corporal Barrett that he determined, during his routine investigation of the accident, that Tobias did not have insurance on the vehicle.

Because Tobias has failed to demonstrate any harm arising from the clerk's reference to the no proof of insurance charge during the oath, we find that the trial court did not abuse its discretion in denying her motion for mistrial on this basis.

4. Tobias also contends that the trial court erred in denying her motion for mistrial when a juror asked the trial judge an oral question in open court. Tobias argues that the juror's question indicated that there may have been jury deliberation in the case prior to the close of evidence. We disagree.

At trial, the State called an expert on vehicle collision reconstruction to testify regarding his investigation of the accident scene. On direct examination, the witness testified that the length of the motorcycle's skid mark was 34.72 feet and that, based on his assessment of the accident scene, the motorcycle was not exceeding the posted speed limit at the time of the crash. On cross-examination, the witness acknowledged that his written investigative report indicated that there was a distance of 65 feet from

14

the beginning of the motorcycle's skid mark to the point of the motorcycle's impact with Tobias' truck. At the request of defense counsel, the jury was taken outside for the demonstrative purpose of showing a distance of 65 feet. Thereafter, the jury was returned to the courtroom for further proceedings. After the State had rested its case and prior to dismissing the jury for the day, the bailiff informed the trial court of a jury question.[28] Prior to addressing the question, the trial court reminded the jury of the proper time to begin deliberations. The trial court then called upon the juror who had the question, whereupon the juror stated that "[t]he question was about the 35 feet and 65 feet. [The expert] said there was 34 feet so why did we measure off 65 feet?" In response, the trial court explained that it could not answer questions of that nature and stated that the attorneys may attempt to clear that up in their closing arguments. The jury was then excused for the day.

At the conclusion of the charge conference, Tobias moved for a mistrial on the basis that the question posed by the juror indicated the possibility of improper jury deliberations. Although the trial court expressed some concern that the question was not presented to the court in written form, and that the trial court responded to the

---

[28] The record does not indicate whether the question was presented on behalf of the entire jury or the individual juror who asked the question of the court.

15

question without consulting counsel, the trial court found that the juror's question did not demonstrate any premature jury deliberations and denied the motion for mistrial.

"Juror misconduct does not always necessitate a mistrial, and the trial judge's decision as to the grant or denial of a mistrial in such cases will not be reversed absent an abuse of discretion."[29] In determining whether the trial court abused its discretion in denying the motion for mistrial based on a juror's statement, we consider the circumstances of the case, "includ[ing] the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety."[30]

Here, the facts showed that the juror had a question regarding the use of demonstrative evidence. The substance of the juror's question, standing alone, does not indicate that an improper discussion had taken place among the jurors.[31]

---

[29] (Citation omitted.) *Lawrence v. State*, 289 Ga. App. 163, 165 (1) (657 SE2d 250) (2008).

[30] (Citation and punctuation omitted.) *Cooke v. State*, 230 Ga. App. 326, 327 (496 SE2d 337) (1998).

[31] See *Ellis v. State*, 164 Ga. App. 366, 370 (9) (296 SE2d 726) (1982) (where a juror, prior to the close of evidence, submitted a handwritten note to the trial judge requesting a clarification of the evidence, the contents of the note itself did not indicate that the jury had improperly discussed the case).

16

Furthermore a trial court is not required to question the jurors whenever there is a bare allegation of misconduct.[32] "In order to upset a jury verdict because of juror misconduct, the jurors' statements must be so prejudicial that the verdict must be deemed inherently lacking in due process. There must be a reasonable probability that the misconduct contributed to the conviction."[33]

We cannot conclude that the juror's question to the trial court demonstrated improper jury deliberations, nor can we conclude that the question in open court was so prejudicial as to deny due process to Tobias. Further, given the evidence introduced against Tobias at trial, we find no reasonable probability that the alleged misconduct contributed to the guilty verdict in this case.[34] Tobias made no effort to have the trial court question the jury as to whether they actually engaged in premature deliberations. Thus, there was no evidence before the trial court that the juror discussed the question with, or presented any extrajudicial information to, any of the other jurors. Nor does it appear that Tobias presented any such evidence at the hearing on his new trial motion. The juror's question was neutral as to the parties

---

[32] *Merritt v. State*, 248 Ga. App. 709, 711 (1) (548 SE2d 427) (2001).

[33] (Punctuation and footnotes omitted.) Id.

[34] *Lawrence*, supra at 166 (1).

involved, and the mere fact that the juror asked this question does not show that any juror had expressed an opinion as to Tobias' guilt or tried to persuade other jurors as to any issue or testimony. Moreover, the trial court reminded the jurors of the proper time to begin deliberations before addressing the question in open court. Under these circumstances, we find that the trial court did not abuse its discretion.

5. In her final enumeration of error, Tobias contends that the trial court erred at sentencing by ordering restitution without considering Tobias' ability to pay. Finding no error, we affirm.

On appeal from an order of restitution, we review the record to determine whether a restitution award was supported by a preponderance of the evidence.[35]

"OCGA § 17-14–7 (b) requires the trial court to hold a hearing to determine restitution 'if the parties have not agreed on the amount of restitution prior to sentencing.' In determining the nature and amount of restitution, the trial court is required to take into account the factors listed in OCGA § 17-14-10 (a)."[36] Those

---

[35] *Overby v. State*, 315 Ga. App. 735, 736 (728 SE2d 278) (2012).

[36] *Cameron v. State*, 295 Ga. App. 670, 671 (2) (673 SE2d 59) (2009).

18

factors include, among others, the offender's financial resources, financial obligations, and income.[37]

At the sentencing hearing, the trial court heard from Beaman's widow and her friend concerning the effect that the accident had on the family. The State then gave its sentence recommendation to the trial court, which included a requirement that Tobias pay $4,595 to the widow to cover the costs of funeral expenses. In response, defense counsel acknowledged that restitution should be paid to the widow, but requested that the trial court consider a reduced fine and twelve months' probation as opposed to incarceration in order to allow Tobias to pay the restitution. Defense counsel further stated that Tobias had decided, upon the advice of counsel, not to make a statement to the family during sentencing because she intended to file a motion for new trial. However, Tobias presented no evidence as to her financial circumstances or ability to pay. The trial court then sentenced Tobias to twelve months, with the first eight months to be served in confinement, fines totaling $600, restitution to the widow in the amount of $4,595, and eighty hours of community service.

---

[37] OCGA § 17-14-10 (a) (1) - (3).

In ordering restitution, it is not sufficient for the trial judge to consider only the amount of damages. Rather, under OCGA § 17-14-10, a trial court must also consider other factors, including the defendant's present financial resources, her earnings and other income, and any financial obligations she might have.[38] It is the defendant's burden to prove these factors by a preponderance of the evidence during the restitution hearing, and the defendant may forego presenting such evidence.[39] In this case, Tobias presented no such evidence, and accordingly, she did not shoulder her burden of proof.[40] Although the trial court did not make findings on the record as to Tobias' financial situation, we have held that "it is unnecessary to require the ordering authority to make a finding on each factor."[41] On appeal from a restitution award, this Court "has the duty of reviewing the transcript to determine whether each

---

[38] OCGA § 17-14-10 (a); *Slater v. State*, 209 Ga. App. 723, 725 (4) (434 SE2d 547) (1993). *McCart v. State*, 289 Ga. App. 830, 832 (1) (658 SE2d 465) (2008) (The trial court is not required to make a finding on the record as to each factor. Further, "[a]n appellate court is capable of reviewing a transcript to determine whether each party has met his or her specified burden.")

[39] See *McCart,* supra.

[40] Id.

[41] Id.; Accord *Turner v. State*, 312 Ga. App. 799, 804 (2) (720 SE2d 264) (2012)

party has met [her] specified burden and [determine] whether a restitution award was supported by the preponderance of the evidence."[42] We find no error.

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[42] (Footnote omitted.) *McCart*, supra.