**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 2, 2022**

# In the Court of Appeals of Georgia

A21A1655. WRIGHT v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Jamie Courtney Wright guilty of two controlled substance offenses and two firearm offenses. Wright appeals from the denial of his motion for a new trial, arguing that: (i) the trial court erred when it admitted (a) statements he made while detained by law enforcement officers without the benefit of *Miranda*[1] warnings and (b) evidence concerning prior convictions entered after he pled guilty to controlled substance and firearm offenses; and (ii) the evidence was insufficient to support his convictions. For the reasons that follow, while we reject Wright's challenges to the admission of statements he made to officers and to the sufficiency

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

of the evidence, we agree that the trial court improperly admitted the facts underlying Wright's prior guilty pleas, and we reverse his present convictions on that basis.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. *Krauss v. State*, 263 Ga. App. 488, 488 (1) (588 SE2d 239) (2003). So viewed, the evidence shows that, in November 2015, a narcotics investigator and other law enforcement officers arrived at a home in Richmond County in search of a fugitive. The homeowner let the officers in and gave consent to search the home. In addition to the homeowner, Wright and another person were in the home at the time. After Wright emerged from a bedroom, the investigator asked him to wait with the other occupants on a screened-in porch. Another officer stood in the yard, "a few feet from the steps leading onto the porch" at that time.

Upon entering the room Wright had vacated, which was now unoccupied, the investigator found a black book bag behind the door. On top of the open book bag's other contents lay a one-gallon plastic bag with more than 47 grams of a green, leafy substance that the investigator initially believed was marijuana but later learned contained a synthetic cannabinoid known as "spice." The investigator then walked out to the porch, where all three occupants were waiting, and asked "who did the bag

2

belong to." At that time, the investigator did not describe the bag he was asking about. Wright, the only one to respond, said that the bag was his. To confirm which bag he was asking about, the investigator retrieved the black book bag and asked Wright if it was his. The record contains no indication that any of the bag's contents were visible to Wright or the others on the porch at that time. Wright responded, "Yeah, that's my bag and everything in it," and he added that the others on the porch "didn't have anything to do with it."

After obtaining Wright's consent to search the bag, the investigator found a handgun, a digital scale, a rolled-up dollar bill with oxycodone powder on it, and 38 smaller bags of "spice." During a search incident to Wright's ensuing arrest, officers also found $605 in small denominations. No personal-use drug paraphernalia — such as rolling papers or smoking devices — was found in the black book bag or on Wright's person. The investigator testified at trial as an expert in narcotics investigation that everything he found was consistent with distribution and not personal use.

Wright testified that he had been dropped off at the home where he was arrested approximately one hour before law enforcement arrived. He claimed that the only bag he had with him at that time was a small red and black bag that contained

3

diapers and other items for his child, and that neither the black book bag at issue here — which he knew nothing about — nor its contents were his. Wright further testified that he had gone into the room where the black book bag was found to look out of a window when the officers arrived. According to Wright, he never told officers that he owned the black book bag but instead simply claimed ownership of the red and black bag he brought with him.

At the conclusion of the first part of Wright's bifurcated trial, the jury found him guilty of possession with intent to distribute a Schedule I controlled substance ("spice"), possession of a Schedule II controlled substance (oxycodone), and possession of a firearm during the commission of a crime. During the second part of the bifurcated trial, the trial court admitted Wright's 2011 convictions and sentences for possession with intent to distribute marijuana and possession of a firearm during the commission of a crime, following which the jury found him guilty of possession of a firearm by a convicted felon.[2]

---

[2] As discussed in more detail below in Division 2, the trial court admitted evidence of the facts underlying the prior convictions during the first part of the bifurcated trial. The convictions and sentences themselves, however, were admitted only during the second part of the bifurcated trial.

1. On appeal, Wright challenges the denial of his pre-trial motion to suppress the investigator's testimony that Wright made two statements claiming ownership of the black book bag and its contents. He contends that his statements were inadmissible as the products of a custodial interrogation that occurred before officers advised him of his *Miranda* rights. We disagree.[3]

In reviewing a trial court's decision on a motion to suppress, we accept the trial court's rulings on disputed facts unless clearly erroneous, but review the application of the law to the facts de novo. *State v. Hammond*, 313 Ga. App. 882, 884 (723 SE2d 89) (2012). We construe the evidence in the light most favorable to the trial court's decision. *State v. Holler*, 224 Ga. App. 66, 71 (2) (b) (479 SE2d 780) (1996). "[I]n conducting our review, we may consider trial testimony in addition to the testimony submitted during the motion to suppress hearing." *Thompson v. State*, 313 Ga. App. 844, 846 (1) (723 SE2d 85) (2012) (citation and punctuation omitted).

The Fifth Amendment bars the admission of an accused's statements made during a custodial interrogation, unless he first is advised of and voluntarily waives

---

[3] Although we reverse Wright's convictions in Division 2, we nevertheless address this claim because it involves issues likely to recur on retrial. See *Allaben v. State*, 299 Ga. 253, 257 (3) (787 SE2d 711) (2016); *Hines v. State*, 353 Ga. App. 710, 714 (3) (839 SE2d 208) (2020); see also Divisions 2 and 3, below.

his *Miranda* rights. *Gardner v. State*, 261 Ga. App. 10, 11 (582 SE2d 7) (2003); see *Miranda v. Arizona*, 384 U. S. 436, 444-445, 478-479 (III) (86 SCt 1602, 16 LE2d 694) (1966). "The issue of whether a person is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous." *Pugh v. State*, 323 Ga. App. 31, 36 (2) (747 SE2d 101) (2013) (citation and punctuation omitted).

> The test to determine whether a detainee is in custody for *Miranda* purposes is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. The safeguards prescribed by *Miranda* become applicable only after a detainee's freedom of action is curtailed to a degree associated with formal arrest.

*Owens v. State*, 308 Ga. App. 374, 378 (2) (707 SE2d 584) (2011) (citation and punctuation omitted); see *Miranda*, 384 U. S. at 477 (III) (explaining that protections of that decision apply "when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way").

> When making this determination,

> a court must examine all of the circumstances surrounding the interrogation . . . . Whether a suspect is in custody does not depend upon the subjective views harbored by either the interrogating officers or the

6

person being questioned. Instead, the only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation. A reasonable person is one neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances.

*Chavez-Ortega v. State*, 331 Ga. App. 500, 502-503 (1) (771 SE2d 179) (2015) (citations and punctuation omitted); accord *Pugh*, 323 Ga. App. at 36 (2) ("Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary.") (citation and punctuation omitted). Thus, "a custodial situation does not arise even if an officer believes he has probable cause to arrest a defendant, where the officer takes no overt step to communicate that belief." *Pugh*, 323 Ga. App. at 37 (2) (citation and punctuation omitted); see *Arce v. State*, 245 Ga. App. 466, 466-467 (538 SE2d 128) (2000) (probable cause for an arrest, standing alone, does not convert a temporary detention into a formal arrest), disapproved in part on other grounds by *State v. Turnquest*, 305 Ga. 758, 775 & n. 15 (827 SE2d 865) (2019).

"[A]s a general rule, one who is the subject of a general on-the-scene investigation is not in custody though he may not be free to leave during the investigation." *State v. Lucas*, 265 Ga. App. 242, 244 (2) (593 SE2d 707) (2004)

7

(citation and punctuation omitted); see *Miranda*, 384 U. S. at 477-478 (III) (the requirements of *Miranda* do not apply to "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" because "[i]n such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present"). In that situation, officers may make inquiries "solely to determine whether there currently is any danger to them or other persons" and "may even temporarily detain anyone who tries to leave before the preliminary investigation is completed." *State v. Wintker*, 223 Ga. App. 65, 67 (476 SE2d 835) (1996). A detention accompanied by such inquiries does not trigger *Miranda*'s requirements "unless the questioning is aimed at obtaining information to establish a suspect's guilt."[4] Id. (citations and punctuation omitted); accord *Thompson*, 313 Ga. App. at 847-848 (1); *Lucas*, 265 Ga. App. at 244 (2); see *Futch v. State*, 145 Ga. App. 485, 486, 488-489 (3) (243 SE2d 621) (1978) (a question regarding who owned a closed trunk suspected of containing marijuana, made during an initial on-the-scene investigation involving two suspects at a motel before any arrest, did not require *Miranda* warnings). Thus, *Miranda* warnings are not required where a defendant who is not in custody "responds to an officer's initial

[4] We address this proposition more fully in Division 1 (c), below.

8

inquiry at an on-the-scene investigation that had not become accusatory." *Taylor v. State*, 235 Ga. App. 323, 326 (2) (509 SE2d 388) (1998) (citation and punctuation omitted); see id. at 324-327 (1)-(2) (concluding that *Miranda* warnings were not required when a detective informed the defendant, while standing outside of a store where her purse had been found by a store clerk, "that he was investigating the marijuana found in her purse," because the detective's statements did not constitute interrogation "aimed at establishing her guilt," but rather were focused on assessing the general nature of the situation).

Here, the circumstances under which Wright admitted ownership of the black book bag and its contents do not rise to the level of a custodial interrogation for purposes of the *Miranda* requirements. Three primary factors inform our ruling in this regard.

(a) First, Wright has identified no evidence that officers told any of the occupants of the home that they were under arrest or explicitly forbade them to leave the premises.[5] Of course, a reasonable person in the occupants' shoes likely would

---

[5] Before trial, the trial court held a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), to determine the voluntariness of Wright's allegedly custodial incriminating statements. See *Clark v. State*, 309 Ga. App. 749, 751 (3) (711 SE2d 339) (2011). During that hearing, the investigator

9

understand the investigator's request to wait on the porch as indicating that they were expected to remain there while officers searched the home for the fugitive they sought. No reasonable person, however, would perceive such a detention as anything other than temporary. See *Owens*, 308 Ga. App. at 378-379 (2) (defendant was not in custody for *Miranda* purposes when he was detained for 20 minutes, during which time he was neither handcuffed nor otherwise restrained); *Arce*, 245 Ga. App. at 466-467 (defendant was not in custody while submitting to field sobriety tests, as there was no evidence that the officer communicated anything other than the fact that he was conducting a brief investigatory stop, notwithstanding the existence of probable cause to arrest the defendant); see also generally *Chavez-Ortega*, 331 Ga. App. at 502-503 (1). And even accepting at face value Wright's repeated assertions that he and the others on the porch were "guarded" by one or more officers "standing watch" over them, the trial court was entitled to find that the officers' actions in that regard were incident to the occupants' temporary detention while officers assessed the scene. See *Lucas*, 265 Ga. App. at 244 (2); *Wintker*, 223 Ga. App. at 67.

---

testified that Wright was free to move around the porch before his arrest and that the investigator did not coerce Wright into making a statement with any kind of threat or action.

(b) Second, viewing the evidence in the light most favorable to the trial court's ruling, the investigator's initial question regarding ownership of "the bag" — which the investigator did not otherwise identify at that time — was directed to all three occupants then on the porch, rather than to Wright individually. Such a general request for information to all persons present in a residence (or its curtilage) does not bear the hallmarks of a "custodial interrogation" or questioning aimed at establishing a particular suspect's guilt, but rather more closely resembles a "general on-the-scene investigation." See *Lucas*, 265 Ga. App. at 244 (2); *Wintker*, 223 Ga. App. at 67; *Futch*, 145 Ga. App. at 486, 488-489 (3).

(c) Finally, the investigator's second question, in which he showed the black book bag to Wright and asked him to confirm that it was his — while all three occupants remained free to move about the porch — did not change the nature of Wright's detention. Nevertheless, Wright contends that *Miranda* warnings were required because the investigator's second question confronted Wright with the evidence against him and thus was aimed at establishing his guilt of a drug offense. However, Wright has not cited, and research has not revealed, any binding precedent expressly holding that the subjectively accusatory or incriminating nature of an

11

officer's question (from the officer's point of view)[6] during an initial, on-the-scene investigation — standing alone — is sufficient to transform a non-custodial situation into a "custodial interrogation" for purposes of the *Miranda* requirements. We address in turn each of the decisions cited by Wright on this issue.

In *Lucas*, 265 Ga. App. at 243 (2), the defendant (Lucas) gave deputy sheriffs — who sought to serve a warrant on a third party — consent to search his home for the third party while Lucas and another man remained seated in the living area, watched over by one deputy. During the search, another deputy found marijuana and rolling papers on a cookie tray in a bedroom. Id. That deputy confronted the two men with the tray and asked to whom it belonged; Lucas said that it was his and was arrested. Id. The trial court granted Lucas's motion to suppress his statement on the ground that it was the result of a custodial interrogation conducted without the benefit of *Miranda* warnings. Id. at 242.

The State appealed, contending that Lucas was not in custody for *Miranda* purposes when he claimed ownership of the tray. *Lucas*, 265 Ga. App. at 242, 243 (2). This Court affirmed, highlighting that "an objective standard is used to determine

[6] As further explained below, on the facts of this case, the investigator's second question was not *objectively* accusatory, insofar as the incriminating nature of the question required knowledge that suspected contraband was found in or on the bag.

12

custody," under which "the proper inquiry is whether a reasonable person in Lucas's place would have believed that his freedom was curtailed in a significant way when the deputy asked who owned the marijuana," and concluding that the trial court was entitled to find that standard had been satisfied. Id. at 244 (2). When read as a whole, we construe *Lucas* as standing for the proposition that a custodial interrogation may begin when officers confront a temporarily detained person with evidence that, on its face, would lead a reasonable person to believe that his detention no longer would be temporary. Accord *Owens*, 308 Ga. App. at 378 (2); see also *Rhode Island v. Innis*, 446 U. S. 291, 300-301 (II) (A) (100 SCt 1682, 64 LE2d 297) (1980) (the inquiry as to whether in-custody questioning is "reasonably likely to elicit an incriminating response" "focuses primarily upon the perceptions of the suspect, rather than the intent of the police"). Here, by way of contrast, the record contains no indication that Wright was expressly confronted with contraband or any other objectively obvious wrongdoing when merely asked to confirm his ownership of the black book bag. Thus, unlike the situation in *Lucas*, a reasonable person in Wright's place "neither guilty of criminal conduct" nor "insensitive to the seriousness of the circumstances," *Chavez-Ortega*, 331 Ga. App. at 503 (1), would have no reason to believe that his freedom was curtailed any more than it had been when the first question about "the

13

bag" was asked. See *Owens*, 308 Ga. App. 378 (2); see also *Innis*, 446 U. S. at 300-301 (II) (A); *Chavez-Ortega*, 331 Ga. App. at 503 (1) ("Whether a suspect is in custody does not depend upon the subjective views harbored by either the interrogating officers or the person being questioned.") (citation and punctuation omitted).

In *Thompson*, 313 Ga. App. at 845-846, 847-848 (1), we held that an officer's question as to "where [Thompson, the defendant] put the vacuums" — made while Thompson was being detained and after he had been identified as a suspect in the theft of vacuum cleaners — "was clearly aimed at establishing his guilt" and thus should have been preceded by *Miranda* warnings. Notably, however, before he was questioned, Thompson had been found to be in possession of a crack pipe and push rods (which had then been placed on top of a patrol car), and he had admitted to an officer that he recently bought and used crack cocaine. Id. at 847 (1). We concluded that, "[u]nder these circumstances, after producing drug paraphernalia, admitting to owning same, and admitting to recently buying and using drugs, a reasonable person would certainly perceive himself to be in police custody." Id. No such circumstances are present here.

14

In *Gardner*, 261 Ga. App. at 11, it was undisputed that the defendant was in custody, and the only question on appeal thus was whether the statement sought to be suppressed "was made in direct response to police interrogation or its functional equivalent." *Gardner* thus has no application in this case.

Finally, in *United States v. Luna-Encinas*, 603 F3d 876, 877-878, 879 (I), 882-883 (II) (11th Cir. 2010), which involved a prosecution for possession of a firearm by an alien unlawfully in the United States, the federal appellate court affirmed the denial of the defendant's motion to suppress his answer to an officer's question about where a gun was located in his apartment. The court (a) highlighted that the defendant at that time had been "detained for a relatively brief period in a neutral, outdoor location" while officers searched the area for a third party and (b) concluded that "a reasonable person in his position would not have understood his freedom of action to have been curtailed to a degree associated with formal arrest" for purposes of the *Miranda* requirements. Id. at 882 (II) (citation and punctuation omitted). *Luna-Encinas* therefore also does not aid Wright's argument, but rather supports the trial court's ruling here.[7]

_____

[7] A few decisions not cited by Wright, which initially may be read to support his claim on this issue, do not reach so far on closer inspection. For example, in *Aldridge v. State*, 247 Ga. 142, 144-145 (2) (274 SE2d 525) (1980), the Supreme

All in all, the investigator's questions about the black book bag in this case did

not bear the hallmarks of a "custodial interrogation," primarily because (a) Wright's

---

Court of Georgia stated that, "[s]o long as the interrogation is not aimed at obtaining information to establish a suspect's guilt but is instead aimed at determining the nature of the situation upon the arrival of the policeman on the scene, some initial inquiry may, under the circumstances, be permissible before *Miranda* warnings are given." That observation, however, relied on the Court's prior decision in *Shy v. State*, 234 Ga. 816, 819-823 (I) (218 SE2d 599) (1975), which, in turn, had employed a balancing test that no longer is used in determining custody for *Miranda* purposes. See *State v. Folsom*, 285 Ga. 11, 13 (1) (673 SE2d 210) (2009). Regardless, the *Aldridge* Court found that the questioning at issue — in which an officer merely asked the defendant "what happened" after finding the defendant and his severely injured wife in a room in their home in which a rifle also was present — was not accusatory. 247 Ga. at 145 (2). As a result, the Court had no occasion to hold — and therefore did not hold — that the answer to a question subjectively aimed at establishing a suspect's guilt made during an initial, on-the-scene investigation, but before the suspect's freedom of action has been curtailed to a degree associated with formal arrest, must be suppressed in an ensuing prosecution if not preceded by *Miranda* warnings. See id. at 144-145 (2). Similarly, in *Lolley v. State*, 259 Ga. 605, 606-607 (2) (b) (385 SE2d 285) (1989), the Court quoted the above passage from *Aldridge*. Notably, however, the *Lolley* Court found no *Miranda* violation, despite assuming that the suspect was "in custody" when he made the challenged statements. Id. at 606 (2) (a). And as in *Aldridge*, the *Lolley* Court did not hold either (a) that a question aimed at establishing a suspect's guilt — without more — may transform a non-custodial interrogation into a custodial interrogation or (b) that the answer to such a question made during a non-custodial interrogation must be suppressed if not preceded by *Miranda* warnings. See id. at 606-607 (2) (a)-(b). Likewise, in *Taylor*, 235 Ga. App. at 326 (2), and *Wintker*, 223 Ga. App. at 67, each of which contain language similar to the above passage from *Aldridge*, this Court did not hold either (a) that an accusatory question by itself may transform non-custodial questioning into custodial questioning or (b) that responses to such questioning made during a non-custodial interrogation must be suppressed if not preceded by *Miranda* warnings.

16

freedom of action had not been "curtailed to a degree associated with formal arrest," *Owens*, 308 Ga. App. at 378 (2) (citation and punctuation omitted), and (b) the questions did not expressly refer to contraband or otherwise implicate a crime or other wrongdoing and thus lacked an "accusatory nature," see *Thompson*, 313 Ga. App. at 848 (1). See also generally *Lucas*, 265 Ga. App. at 243-244 (2); *Wintker*, 223 Ga. App. at 68-69 (concluding that *Miranda* was triggered when the teenage defendant was locked in the back seat of a patrol car — with a handcuffed friend who had been arrested — and asked whether she owned a suitcase containing drugs that officers found in a car in which she had been a passenger and on which a drug dog had alerted, because, under the totality of the circumstances, there was a significant "compulsive aspect" to the "isolated and police-dominated" interrogation) (citation and punctuation omitted).

Naturally, it is apparent that the investigator in this case, having found suspected drugs on top of the black book bag's other contents, subjectively may have perceived his second question as being aimed at establishing Wright's guilt and that Wright — assuming that he knew of the book bag's contents — subjectively may have perceived that question in the same way. Those considerations, however, play no part in our analysis, which asks only what a reasonable person neither guilty of

17

criminal conduct nor insensitive to the seriousness of the circumstances would perceive. See *Chavez-Ortega*, 331 Ga. App. at 502-503 (1); see also *Innis*, 446 U. S. at 300-301 (II) (A). And under that test, there was no objectively accusatory, "compulsive," or "isolated and police-dominated" aspect to the investigator's questions. See *Wintker*, 223 Ga. App. at 68-69; see also *Chavez-Ortega*, 331 Ga. App. at 503 (1); *Taylor*, 235 Ga. App. at 326 (2). We therefore affirm the denial of Wright's motion to suppress.

2. Wright further contends that the trial court erred when, during the first part of his bifurcated trial, it admitted evidence of the facts underlying his 2011 convictions for possession with intent to distribute marijuana and possession of a firearm during the commission of a crime. The trial court admitted this evidence for the limited purposes of establishing Wright's knowledge, intent, and lack of mistake and gave the jury limiting instructions to that effect. We agree with Wright that this evidence was improperly admitted.

We review a trial court's decision to admit other acts evidence for abuse of discretion. See *State v. Jones*, 297 Ga. 156, 159 (1) (773 SE2d 170) (2015); accord *Parks v. State*, 300 Ga. 303, 305-306 (2) (794 SE2d 623) (2016). The statute

18

primarily applicable to such evidence — OCGA § 24-4-404 (b) ("Rule 404 (b)") —

provides, in relevant part:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Rule 404 (b) "is, on its face, an evidentiary rule of inclusion." *Jones*, 297 Ga. at 159

(2). Nevertheless, relevant evidence offered for a proper purpose under Rule 404 (b)

may be excluded "if its probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence."

OCGA § 24-4-403 ("Rule 403"); *Jones*, 297 Ga. at 158 (1).

> Thus, for evidence to be admissible under these provisions,

> the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character; (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.

19

*Jones*, 297 Ga. at 158-159 (1) (citation omitted). To address the first part of this test, we look to OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See *Heard v. State*, 309 Ga. 76, 84-85 (3) (b) (844 SE2d 791) (2020). "This is a binary question — evidence is either relevant or it is not." Id. at 85 (3) (b).

The second prong of the *Jones* test — application of Rule 403 — requires a trial court to "undertake in each case a considered evaluation of the proffered justification for the admission of such evidence and make an independent determination of whether the probative value of the evidence is substantially outweighed by" any of the Rule 403 factors. *Jones*, 297 Ga. at 163 (3). "In weighing the probative value of other acts evidence, a court may consider a number of factors, including (1) prosecutorial need, (2) overall similarity of the other acts and the acts charged, and (3) the temporal remoteness of the other acts." *Thompson v. State*, 308 Ga. 854, 859 (2) (843 SE2d 794) (2020).

"[T]here is no mechanical solution for this balancing test." *Jones*, 297 Ga. at 163 (3). Rather, "[a] Rule 403 analysis must be done on a case-by-case basis and requires a common sense assessment of all the circumstances surrounding the

20

extrinsic act and the charged offense." *Green v. State*, 352 Ga. App. 284, 290 (2) (e) (834 SE2d 378) (2019) (citation and punctuation omitted). Generally speaking, however,

> the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. . . . Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered. . . . And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.

*Olds v. State*, 299 Ga. 65, 75-76 (2) (786 SE2d 633) (2016) (citations omitted).

"The major function of [Rule 403] is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Sloan v. State*, 351 Ga. App. 199, 210 (2) (e) (ii) (830 SE2d 571) (2019) (citation and punctuation omitted). Thus, "the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Olds*, 299 Ga. at 70 (2). In that regard, an appellate court reviewing issues under Rule 403 must "look at the evidence in a light most favorable to its admission, maximizing its probative value

21

and minimizing its undue prejudicial impact." *Sloan*, 351 Ga. App. at 208 (2) (e) (citation and punctuation omitted).

Wright does not dispute that the State satisfied the third prong of the *Jones* test; his appellate challenges thus implicate only the first two prongs. During Wright's trial, an investigator testified that, in June 2011, he stopped a car in which Wright was a passenger (because Wright was not wearing a seatbelt) after watching what appeared to be a drug transaction. Officers searched Wright and found three bags of marijuana with a combined weight of 25.9 grams, a pistol, and $730 in cash in his pants pockets, as well as a digital scale on the car seat where he had been sitting. The investigator did not find any personal-use paraphernalia on Wright at that time. As a result of that encounter, Wright pled guilty to possession with intent to distribute marijuana and possession of a firearm during the commission of a crime.[8]

Immediately before testimony about the 2011 incident, the trial court gave a limiting instruction, telling the jury that it could consider evidence of other crimes allegedly committed by Wright only "insofar as [such evidence] relates to"

---

[8] While Wright admitted during cross-examination (in the first part of his bifurcated trial) that, as a result of the June 2011 encounter, he pled guilty to one or more offenses involving an "inten[t] to distribute," the ensuing convictions and sentences resulting from those guilty pleas were not admitted into evidence until the second part of the bifurcated trial.

22

knowledge, intent, and lack of mistake in the current case, "and not for any other purpose." The court repeated this instruction during the jury charge. For the reasons that follow, the evidence was improperly admitted on all three bases.

(a) *Knowledge.* For purposes of Rule 404 (b), "knowledge" refers either to a special skill, such as safe-cracking, bomb-making, or document forgery, or to specific knowledge based on past experience such as a trespass conviction used to establish a defendant's knowledge that he was not welcome on the premises. See Paul S. Milich, Ga. Rules of Evidence § 11:17, p. 348 & n. 1 (2019-2020 ed.), cited in *Rouzan v. State*, 308 Ga. 894, 899 (2) (843 SE2d 814) (2020) (concluding that prior guilty pleas to voluntary manslaughter and burglary were not relevant to the defendant's "knowledge" in a prosecution for murder and a gun-possession offense); *United States v. Walters*, 351 F3d 159, 161, 164-167 (I)-(II) (A) (5th Cir. 2003) (in a prosecution for making and sending a bomb, evidence that the defendant possessed a book entitled "The Anarchist's Cookbook" was properly admitted under Rule 404 (b) to show that the defendant "had the knowledge to construct the destructive device used to commit the crimes alleged in the indictment") (punctuation omitted); *United States v. Garcia*, 880 F2d 1277, 1278-1279 (11th Cir. 1989) (in a prosecution for making a false statement on a loan application, evidence that the defendant previously

23

signed a third party's name on a document purporting to sell the third party's apartment to the defendant was properly admitted under Rule 404 (b), as it showed that the defendant "had the ability to prepare documents purporting to bear signatures which were faked").[9]

Moreover, "a defendant's knowledge may be at issue where it is an element of the charged crime; that is, when knowledge itself is part of the statutory definition of the crime, and thus must be proven by the prosecution." *Green*, 352 Ga. App. at 289 (2) (c) (citation and punctuation omitted). For example, in a prosecution for reckless conduct, the defendant's knowledge of his and his sexual partners' HIV status "was highly probative and relevant as to whether he . . . knew that he was [HIV-]positive at the time he engaged in sexual relationships with the victims." *Davis v. State*, 342 Ga. App. 889, 894 (1) (806 SE2d 3) (2017) (citation and punctuation omitted). And in a prosecution for misdemeanor obstruction of an officer, prior instances of obstruction may be relevant to show that the charged act of obstruction was knowing

---

[9] "[B]ecause our new Evidence Code is comparable to the Federal Rules of Evidence, this Court will give consideration and great weight to constructions placed on the Federal Rules by the federal courts." *Curry v. State*, 330 Ga. App. 610, 613 (1) (768 SE2d 791) (2015) (citation and punctuation omitted).

24

and wilful, as required by the relevant statute. See *Green v. State*, 339 Ga. App. 263, 265-267 (1) (a) (793 SE2d 156) (2016).

> Knowledge is also properly in issue when the defendant claims that he or she was unaware that a criminal act was being perpetrated. In such cases, the hypothesis justifying the admission of other-acts evidence is similar to that invoked with intent: the likelihood that repeated instances of behavior, even if originally innocent, will have resulted in [the] defendant's having the requisite state of knowledge by the time of the charged crime.

*Green*, 352 Ga. App. at 289 (2) (c) (citation and punctuation omitted). Where no special knowledge or talent is required to commit the charged crime, however, other acts should not be admitted simply to show that the defendant is "capable" of committing the charged offense. Id. at 289-290 (2) (c) (citing Paul S. Milich, Ga. Rules of Evidence § 11:17, pp. 340-341 (2018-2019 ed.)).[10]

---

[10] As explained by Professor Milich,

The probative value of proving knowledge lies in answering a concern a juror might otherwise have: "did the defendant know how to do that?" If the crime, such as robbing a person with a pistol, requires no special skill, then that juror concern never arises and there is no probative value to the evidence other than the illegitimate inference — "he did it before so he probably did it again."

Paul S. Milich, Ga. Rules of Evidence § 11:17, p. 348, n. 2 (2020-2021 ed.).

There is no allegation that any special knowledge or skill was required for any of the offenses at issue here. See *Rouzan*, 308 Ga. at 899 (2); *Davis*, 342 Ga. App. at 894 (1). Moreover, Wright did not claim that he was unaware that items in his possession contained drugs and a gun — he merely disclaimed ownership of the black book bag outright. See *Green*, 352 Ga. App. at 289 (2) (c). Under these circumstances, Wright's knowledge was not at issue in this case, and the trial court therefore erred in admitting the other acts evidence on this basis. See *Rouzan*, 308 Ga. at 899 (2); *Green*, 352 Ga. App. at 289 (2) (c); *Davis*, 342 Ga. App. at 894 (1).

(b) *Intent.* The first prong of the Rule 404 (b) test is met where intent is a material issue on which the State bears the burden of proof and "the same state of mind was required for committing the prior act and the charged crimes." *Jones*, 297 Ga. at 160-161 (2). In that regard, "a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State." Id. at 161 (2), n. 4; accord *Kirby v. State*, 304 Ga. 472, 480 (4) (a) (819 SE2d 468) (2018); *Sloan*, 351 Ga. App. at 208 (2) (d).

(i) *Relevance.* Wright's prior convictions are relevant to show his intent here because the same intent was required in both cases, and he did not affirmatively seek to withdraw intent as an element to be proved by the State as to each offense in this

26

case. See *Kirby*, 304 Ga. at 480 (4) (a); *Jones*, 297 Ga. at 160-161 (2) & n. 4; *Sloan*, 351 Ga. App. at 208 (2) (d). We therefore must address whether the danger of unfair prejudice substantially outweighed the probative value of the other acts evidence. See OCGA § 24-4-403; *Jones*, 297 Ga. at 159 (1).

(ii) *Rule 403*. When applying the Rule 403 balancing test to other acts evidence of intent, the inquiry as to prosecutorial need focuses on whether there is any "danger that a rational jury could find that although the defendant committed the objective, charged acts, he did not intend to do so." *Sloan*, 351 Ga. App. at 209 (2) (e) (i) (citation and punctuation omitted); accord *Chynoweth v. State*, 331 Ga. App. 123, 128 (3) (768 SE2d 536) (2015) (citing Paul S. Milich, Ga. Rules of Evidence, § 11:13, p. 321 (2014-2015 ed.)). Thus, the prosecutorial need for other acts evidence of intent is minimal where it is "unlikely, based upon the particular facts and circumstances of th[e] case, that any rational jury could find that the perpetrator lacked criminal intent." *Sloan*, 351 Ga. App. at 210 (2) (e) (i); accord *Jackson v. State*, 306 Ga. 69, 78-80 (2) (b) (ii) (829 SE2d 142) (2019) (in a prosecution for murder involving a shooting into a retreating car, evidence that the defendant previously shot another man who was retreating in his truck should not have been admitted to show intent because "[n]either party ever contended that the shooting [under prosecution] was

27

unintentional," as a result of which the prosecutorial need for the other acts evidence was "negligible"); *Green*, 352 Ga. App. at 291 (2) (e) (i) (concluding that "the prosecutorial need for [other acts] evidence was negligible with regard to intent as no evidence was presented showing that the [charged criminal act] was unintentional and [the defendant] presented no such defense"); see also generally *Brown v. State*, 303 Ga. 158, 162 (2) (810 SE2d 145) (2018) ("When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.") (citation and punctuation omitted); *Smith v. State*, 232 Ga. App. 290, 293 (1) (501 SE2d 523) (1998) ("[W]here intent may be easily inferred from the commission of the act itself, the probative value of similar transaction evidence proffered to prove intent will generally be outweighed by its prejudicial effect.").

Here, the jury was tasked with choosing between two competing versions of events. Under the State's version — based entirely on the investigator's testimony — Wright claimed sole ownership of the black book bag "and everything in it." Under Wright's version — based entirely on his testimony — (i) he had only one bag with him: a small red and black bag; (ii) he knew nothing about the black book bag or its contents; and (iii) he never claimed ownership of the black book bag or its contents

28

but instead simply claimed ownership of the red and black bag he brought with him.[11] These versions are mutually exclusive: if the jury believed the investigator, it would have to disbelieve Wright; if the jury believed Wright, it would have to disbelieve the investigator.

Regardless of which version of events the jury believed, however, in neither scenario is there any likelihood that the jury would find that Wright possessed the items in the black book bag but intended neither to possess the drugs and gun nor to distribute the drugs, given the volume of drugs, the packaging, the presence of a scale and a gun in the same bag, and the absence of personal-use paraphernalia.[12] The

---

[11] While Wright testified that he "didn't give a direct statement taking ownership of anything," he then added, "I told them what I had," which, he claimed, was the red and black bag he brought with him.

[12] Had there been some evidence that Wright possessed the black book bag but did not intend to possess its contents — for example, if he claimed that the black book bag was his but that he knew nothing of its contents — the prosecutorial need for other acts evidence of intent would then be much higher. See *Sloan*, 351 Ga. App. at 210 (2) (e) (i) ("'The classic situations calling for admissibility of independent crimes or acts to prove intent are when the defendant admits a certain involvement in the criminal incident but maintains he was duped or forced to go along and thus lacked the necessary criminal intent or the defendant admits the charged conduct but claims he did not intend to act criminally.'") (quoting Paul S. Milich, Ga. Rules of Evidence, § 11:15, p. 330 (2018-2019 ed.)); accord, e.g., *Westbrook v. State*, 355 Ga. App. 334, 336-338 (1)-(2) (844 SE2d 208) (2020) (evidence of a prior armed robbery conviction was "highly probative of [the defendant's] intent" when he drove an accomplice to and from the charged armed robberies but claimed that he was ignorant

prosecutorial need for the other acts evidence to show intent here therefore was minimal. See *Jackson*, 306 Ga. at 78-80 (2) (b) (ii); *Sloan*, 351 Ga. App. at 210 (2) (e) (i); see also *McKinney v. State*, 307 Ga. 129, 138 (3) (b), n. 7 (834 SE2d 741) (2019) (evidence of a prior assault committed by the defendant had limited probative value "because the prosecutorial need for it was negligible," given that "[t]here was no real dispute that whoever beat and strangled [the victim in the charged crimes] to death had the intent required for malice murder and aggravated assault with an offensive weapon"); compare *Chynoweth*, 331 Ga. App. at 128 (3) (in a prosecution for attacking a correctional officer, evidence of the defendant's unprovoked attack on another inmate was properly admitted to rebut suggestions that the defendant may have lacked the necessary intent due to mental illness).

at that time of the accomplice's plan to commit the robberies); see also *United States v. Arbane*, 446 F3d 1223, 1226 (II) (B), n. 4 (11th Cir. 2006) (approving of the trial court's instruction to the jury that it was permitted to consider other acts evidence only for the purpose of determining the defendant's intent, "and only if [it] found beyond a reasonable doubt *from other evidence in the case* that [the defendant] did commit the acts charged in the indictment") (emphasis supplied); *United States v. Beechum*, 582 F2d 898, 917 (III) (C), n. 23 (5th Cir. 1978) (implicitly approving of the trial court's instruction to the jury that it could not consider other acts evidence of intent "in determining whether an accused committed the acts or participated in the activity alleged in the indictment" and that the other acts evidence could not be considered for any purpose "unless the jury first [found] that *the other evidence in the case, standing alone,* establishe[d] beyond a reasonable doubt that the accused participated in the activity alleged in the indictment") (emphasis supplied).

30

Moreover, the temporal proximity between the prior June 2011 incident and the November 2015 incident charged here does not materially add to the probative value of the other acts evidence. See, e.g., *Sloan*, 351 Ga. App. at 210 (2) (e) (i) (concluding that six- and eleven-year gaps between prior offenses and the charged offenses did not "appreciably" add to the prior offenses' low probative value). And the similarities between the prior acts and current offenses likewise do not weigh in favor of admissibility for reasons discussed in more detail in Division (2) (b) (iii) and note 13 below.

The danger of unfair prejudice, on the other hand, was significant. The only direct evidence of Wright's guilt in this case came from the testimony of a single witness. And given Wright's testimony that two bags were present (both of which were at least partially black) and that he never claimed ownership of the black book bag, as well as his explanation for why he was in the room with the black book bag, a reasonable juror could have found that Wright intended to claim ownership only of the small red and black bag, and not the black book bag. Viewed in that context, the danger of unfair prejudice from the admission of the facts underlying the prior convictions was high, as it encouraged the jury to find that, because Wright had possessed drugs and a gun together in the past, he was more likely to have done so

here, which plainly is prohibited by Rules 403 and 404 (b). See *Smith*, 232 Ga. App. at 293 (1) (the prejudicial effect of other acts evidence generally will outweigh its probative value "where intent may be easily inferred"); see also generally *Jackson*, 306 Ga. at 78-80 (2) (b) (ii); *Brown*, 303 Ga. at 162 (2) ("[O]ne of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrinsic offense, because the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.") (citation and punctuation omitted).

We are cognizant that courts must view other acts evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Sloan*, 351 Ga. App. at 208 (2) (e) (citation and punctuation omitted). So viewed, even assuming that the temporal proximity and general similarities between the prior acts and charged offenses arguably could weigh somewhat in favor of admissibility, on the facts of this case, the absence of any meaningful prosecutorial need significantly outweighs those factors. And given the limited quantity of evidence from which the jury was tasked with choosing between two diametrically opposed versions of events (again, on the specific facts of this case), the danger that the jury would misuse the evidence for improper propensity

32

purposes — the very essence of unfair prejudice — substantially outweighs any potential probative value that may be attributed to the other acts evidence. See OCGA § 24-4-403; *Jones*, 297 Ga. at 158 (1); see also *Old Chief v. United States*, 519 U. S. 172, 180 (II) (B) (1) (117 SCt 644, 136 LE2d 574) (1997) (explaining that unfair prejudice in this context includes the danger that a jury will "generaliz[e] a defendant's earlier bad act into bad character and tak[e] that as raising the odds that he did the later bad act now charged"); *Troy v. State*, 312 Ga. 860, 863, n. 5 (866 SE2d 394) (2021) ("the unfair prejudice analysis" under Rule 403 focuses on "whatever extent the [other acts] evidence was likely to draw an improper propensity inference"). The trial court therefore abused its discretion in admitting the other acts evidence on this basis, as well.

(iii) *Dissent.* The dissent argues that: (i) the probative value of the other acts evidence is high because the prior acts are "very similar" to the charged offenses; and (ii) the prosecutorial need for the evidence also is high because it is needed to answer the question of whether Wright (rather than "some hypothetical perpetrator") — "who maintained he was merely present at the scene of a crime with many other people" and disclaimed ownership of the black book bag — "intended to possess the bag of

33

drugs." There are three primary, interrelated flaws in the dissent's analysis. We address each in turn.

(A) First, the dissent's approach side-steps the proper balancing test for assessing prosecutorial need (and relative probative value) of other acts evidence of intent under Rule 403, which asks whether a rational jury could find that the defendant committed the objective, charged acts *with no intent to do so*, not whether the evidence generally is probative of the defendant's intent in the abstract. See *Sloan*, 351 Ga. App. at 209 (2) (e) (i); *Chynoweth*, 331 Ga. App. at 128 (3); see also *Jackson*, 306 Ga. at 78-80 (2) (b) (ii) (concluding that there was no prosecutorial need for other acts evidence in a prosecution for murder and a firearm offense where "[a]ll of the evidence at trial indicated that the person who repeatedly fired a gun toward [the victim] had the requisite general intent to commit an assault with a deadly weapon"); *Green*, 352 Ga. App. at 291 (2) (e) (i). Moreover, where, as here, no rational jury could find that Wright possessed the black book bag's contents while intending neither to possess the drugs and gun nor to distribute the drugs, any potential similarities between the prior acts and charged offenses further increase the danger of unfair prejudice — i.e., that the jury will infer guilt based on an improper

34

propensity basis.[13] See *Old Chief*, 519 U. S. at 185 (II) (B) (2) (where prior bad acts involve offenses similar to the charged offenses, the risk of unfair prejudice — i.e., that the nature of the prior bad acts may "lure a juror into a sequence of bad character reasoning" — is "substantial" and "especially obvious").

---

[13] Regardless — and contrary to the dissent's conclusion that the extrinsic acts here are "very similar" to the charged offenses — there are at least as many differences between the prior acts and the charged offenses as there are similarities. While in both episodes, drugs, a gun, a scale, and a large sum of cash were found in some proximity to Wright, the differences include the following: (i) the prior acts involved marijuana, whereas the charged offenses involve a synthetic cannabinoid ("spice"); (ii) the prior acts involved a .22 caliber Jennings semiautomatic pistol, whereas the charged offenses involve a .44 caliber Magnum revolver (a "large caliber handgun"); (iii) the prior acts involved three bags of marijuana weighing a total of 25.9 grams, whereas the charged offenses involve nearly 40 individually packaged bags of "spice" weighing more than 47 grams; and (iv) in the prior acts, the drugs and gun were found on Wright's person, and the scale was found inside a vehicle in which Wright had been a passenger, whereas in the charged offenses, all items other than the cash were found in a black book bag behind a door in a bedroom in another person's residence. Consequently, the quantum of similarities and differences between the two incidents adds little to either side of the equation as to relative probative value. See *Jackson*, 306 Ga. at 78 (2) (b) (ii) (highlighting that "[a] more careful and granular comparison of" the prior acts and charged offenses — both of which involved the defendant firing a gun into a retreating vehicle — "reveal[ed] substantial differences between them"); *Brooks v. State*, 298 Ga. 722, 725-726 (2) & n. 10 (783 SE2d 895) (2016) (explaining that a "major difference" between Georgia's current Evidence Code and our prior "similar transaction" case law is the need under Rule 404 (b) to consider the dissimilarities as well as the similarities between the extrinsic and charged acts).

(B) Second, under the dissent's approach, the exception would swallow the rule, insofar as a "mere presence" defense, without more, would render the prosecutorial need for other acts evidence of intent "high" in any prosecution for a controlled substance offense. While there may be certain factual scenarios in which a "mere presence" defense may increase the prosecutorial need for such evidence (see note 12, above), this is not one. As stated above, if the jury were to believe the investigator and disbelieve Wright, the prosecutorial need for other acts evidence of intent essentially would be nil. If, however, the jury were to believe Wright and disbelieve the investigator, the other acts evidence logically would serve one of two primary, improper purposes.

On the one hand, the jury could infer guilt based on propensity by deciding that: (i) although it was otherwise inclined to believe Wright, because he committed the prior acts, he likely intended to commit the charged offenses; and (ii) because he likely intended to commit the charged offenses, he likely possessed the drugs and gun at issue here, i.e., "act[ed] in conformity" with the prior acts. OCGA § 24-4-404 (b). Under that plainly improper line of reasoning, the jury would be using evidence of *intent* on a prior occasion to impermissibly establish *possession* in the charged offenses. See *Jackson*, 306 Ga. at 79 (2) (b) (ii), n. 10 (the defendant's claim that he

36

was not the perpetrator "was an issue of *identity*, not intent, and evidence of the [extrinsic bad act] was not admitted for that purpose"); see also *United States v. Arbane*, 446 F3d 1223, 1226 (II) (B), n. 4 (11th Cir. 2006) (jury instructed that other acts evidence of intent could be considered only if the jury *first* found that *the remaining evidence* established that the defendant committed the charged acts); *United States v. Beechum*, 582 F2d 898, 917 (III) (C), n. 23 (5th Cir. 1978) (same); Paul S. Milich, Ga. Rules of Evidence § 11:15, p. 336, n. 7 (2020-2021 ed.) (an accused's denial that he committed the predicate act has "nothing to do with proving intent"); see also generally *Old Chief*, 519 U. S. at 181 (II) (B) (1) (extrinsic acts may not be used to show propensity because doing so "is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge") (citation and punctuation omitted).

On the other hand, the other acts evidence could entice the jury to find Wright guilty in this case as punishment for possessing drugs and a gun in the prior case. See *Brown*, 303 Ga. at 162 (2). That danger is heightened where, as here, only the prior acts — and not the convictions and sentences resulting from those acts — were

admitted during the first phase of Wright's bifurcated trial,[14] and the convictions and sentences themselves were not admitted until the second phase of the trial, after the jury already had found Wright guilty of the currently charged offenses. Cf. *Westbrook v. State*, 355 Ga. App. 334, 338 (2) (844 SE2d 208) (2020) (concluding that the potential undue prejudicial effect of other acts evidence was mitigated where the jury learned that the defendant had "been convicted and served a prison sentence for his earlier conduct, making it less likely that the jury would want to punish [the defendant] for this past conduct rather than the charged crimes") (citation and punctuation omitted). In either situation, the other acts evidence serves primarily (if not entirely) an improper purpose.

(C) Finally, while the three decisions on which the dissent primarily relies arguably may appear to support the trial court's ruling here at first glance, each case differs significantly from the present scenario on closer inspection. See *Hargrove v. State*, 361 Ga. App. 106 (863 SE2d 364) (2021); *Moton v. State*, 351 Ga. App. 789 (833 SE2d 171) (2019); *Gunn v. State*, 342 Ga. App. 615 (804 SE2d 118) (2017). Importantly, in none of these decisions did this Court engage in the relevant analysis

---

[14] For this reason, the dissent's references to the jury's consideration of Wright's "prior drug conviction" and "prior conviction" are somewhat misplaced in this context.

with respect to prosecutorial need of other acts evidence of intent under Rule 403, i.e., asking whether a rational jury could find that the defendant committed the objective, charged acts with no intent to do so. Compare *Hargrove*, 361 Ga. App. at 111-117 (2), *Moton*, 351 Ga. App. at 791-794, and *Gunn*, 342 Ga. App. at 618-622 (1), with *Green*, 352 Ga. App. at 291 (2) (e) (i), *Sloan*, 351 Ga. App. at 209 (2) (e) (i), and *Chynoweth*, 331 Ga. App. at 128 (3).

Specifically, in *Hargrove*, prosecutorial need was deemed "significant" for reasons not present here — i.e., because the evidence that the defendant possessed the drugs and paraphernalia in that case "was entirely circumstantial," 361 Ga. App. at 116 (2) (c) (ii), insofar as the contraband was found in plain view in multiple rooms in a residence in which two other persons were present, after the defendant left the residence. See id. at 107-108. Here, however, the State presented direct evidence that Wright claimed ownership of the black book bag (itself hidden behind a door in a single room last occupied by Wright) in which the drugs, gun, and a scale were found.[15] *Hargrove* thus has limited precedential value here.[16]

---

[15] While Wright also testified that he never claimed ownership of the black book bag, his testimony in that regard neither (a) renders evidence of possession here "entirely circumstantial" nor (b) has any bearing on the proper analysis under the facts of this case — whether a rational jury could find that he possessed the items at issue without the requisite intent. See *Jackson*, 306 Ga. at 78-80 (2) (b) (ii); *Green*,

39

In *Moton*, this Court engaged in no discussion of prosecutorial need vis-à-vis

the danger of unfair prejudice under Rule 403,[17] but rather summarily concluded that

352 Ga. App. at 291 (2) (e) (i); *Sloan*, 351 Ga. App. at 209 (2) (e) (i); *Chynoweth*, 331 Ga. App. at 128 (3); see generally Division (2) (b) (ii), above.

[16] On a related note, unlike the instant case, *Hargrove* involved a prosecution based solely on "constructive possession," which required the State to establish that the defendant had "both the power and the intention at a given time to exercise dominion or control over" the contraband at issue, which was found in multiple rooms of a residence occupied by multiple people. 361 Ga. App. at 107, 109 (1) (citation and punctuation omitted); see also id. at 114-115 (2) (c) (i) (concluding that the other acts evidence was relevant to establish the "intent" element of constructive possession). Moreover, while not expressly addressed in this Court's decision, the danger of unfair prejudice in *Hargrove* was substantially lower, insofar as the State also presented evidence that, during the investigation into the charged crimes, the defendant directly engaged in multiple drug transactions with an informant and also engaged in multiple additional acts consistent with drug transactions. See id. at 107. Here, however, the only direct evidence of Wright's guilt came from the testimony of a single witness and concerned only a single set of circumstances that occurred during a short period of time at a single location, thereby rendering the danger of unfair prejudice significant.

[17] In its discussion of *relevance* under *Rule 404 (b)*, this Court in *Moton* observed that: (i) "to prove that [the defendant] had the requisite intent to sell, the State had to prove that [he] also had methamphetamine under his control, as the State alleged with his prior drug possession arrest"; and (ii) "[e]vidence of prior drug activity is highly probative of intent to sell a controlled substance." 351 Ga. App. at 792-793. The proposition that evidence of prior drug activity may be "highly probative" of a defendant's intent to sell drugs *for purposes of relevance* — in the abstract — is a separate question from whether, on the specific facts of a given case, a rational jury could find that a defendant possessed drugs but intended neither to do so nor to distribute the drugs. See *Sloan*, 351 Ga. App. at 209 (2) (e) (i); see also *Olds*, 299 Ga. at 75 (2) ("Relevance and probative value are related, but distinct,

40

the Rule 403 balancing test was satisfied because: (i) "[the defendant]'s possession of drugs in the prior act and the sale in [a transaction then under prosecution] occurred at the same location within two years of one another"; and (ii) "the risk of unfair prejudice to [the defendant] was reduced by the [trial] court's limiting instruction, which was given both prior to [an] officer's testimony [about the prior act] and during the general jury charge." 351 Ga. App. at 793-794. Absent any substantive analysis of prosecutorial need, the decision in *Moton* also has little-to-no precedential value with respect to the facts in this case.

Finally, in *Gunn*, this Court again engaged in no discussion of balancing prosecutorial need against the danger of unfair prejudice under Rule 403, but rather summarily determined that, "under the facts of [that] case," the 11-year time span between a prior conviction and the acts underlying the prosecution at issue did not

_____

concepts. . . . When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence."); accord *Old Chief*, 519 U. S. at 184-185 (II) (B) (1) (distinguishing between (a) relevance and (b) probative value under Rule 403). On the factual scenario presented in this case, there is simply no likelihood that a rational jury would find either that Wright unintentionally possessed the drugs and gun (found together in a bag with a scale) or that, if he possessed them, he did not intend to distribute the individually packaged drugs.

41

render the prior conviction "too remote to erode" its probative value.[18] 342 Ga. App. at 621-622 (1). Absent any relevant analysis, *Gunn*'s precedential value here also is limited, at best.[19]

For each of the above reasons, the trial court erred when it admitted the other acts evidence for purposes of establishing Wright's intent in the current prosecution.

(c) *Lack of mistake.* Wright never claimed, nor was there any evidence to suggest, that he accidentally or mistakenly possessed the drugs and gun at issue in

---

[18] Although the trial court in *Gunn* admitted the other acts evidence for purposes of establishing motive, intent, and knowledge, 342 Ga. App. at 618 (1), this Court addressed only intent to distribute on appeal, id. at 620-622 (1).

[19] Two of the remaining decisions cited by the dissent — *Bradshaw v. State*, 296 Ga. 650 (769 SE2d 892) (2015) (prosecution for malice murder and other crimes in connection with the shooting deaths of two victims); and *Williams v. State*, 328 Ga. App. 876 (763 SE2d 261) (2014) (prosecution for burglary; other acts evidence limited to a *witness's* prior conviction) — also contain no substantive analysis regarding the balancing of prosecutorial need against unfair prejudice where intent easily may be inferred based on all of the circumstances. And the other remaining decision cited by the dissent — *Olds*, 299 Ga. 65 (prosecution for false imprisonment and battery), in which the Supreme Court vacated a decision of this Court and remanded the case for this Court to engage in a proper Rule 403 analysis — supports our ruling on this issue in this case. See id. at 75-76 (2) (observing that: (i) probative value "depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered"; (ii) "[t]he stronger the other proof, the less the marginal value of the evidence in question"; and (iii) application of the Rule 403 test "calls for a careful, case-by-case analysis, not a categorical approach").

this case. Consequently, whether the charged offenses resulted from an accident or mistake was irrelevant. See, e.g., *Brown*, 303 Ga. at 161-162 (2) (holding that the trial court erroneously admitted prior aggravated assault convictions to show absence of mistake or accident where the defendant never claimed, and there was no evidence to suggest, that the charged shooting was an accident or mistake); *Thompson v. State*, 302 Ga. 533, 541 (III) (A) (807 SE2d 899) (2017) (evidence of a subsequent armed robbery was inadmissible to show mistake with respect to the charged shootings and robberies because there was no allegation that the defendant "accidentally or mistakenly shot the victims or that he accidentally or mistakenly stole their property"); *Parks*, 300 Ga. at 306 (2) (a prior aggravated assault conviction was inadmissible to show knowledge or absence of mistake in a prosecution for murder and aggravated assault because the defendant's knowledge was not at issue in light of his justification defense, "and he made no claim that he *accidentally* or *mistakenly* shot the victim"); compare *Thompson*, 308 Ga. at 859 (2) (in a murder prosecution, evidence of the defendant's prior acts of violence toward family members was relevant to rebut his claim that his wife's death resulted from accident or mistake). The trial court therefore similarly erred in admitting the other acts evidence on this basis.

(d) *Harm.* Having determined that the trial court erred when it admitted the other acts evidence under Rules 403 and 404 (b), we must review the record de novo to determine whether the error was harmless. *Brown*, 303 Ga. at 164 (2). "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." Id. (citation and punctuation omitted). In making this assessment, "we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case." Id. (citation and punctuation omitted).

As alluded to above, absent the other acts evidence, the remaining evidence of Wright's guilt was not overwhelming, but rather rested primarily on the testimony of a single witness. And the jury reasonably could have found from Wright's testimony that he intended to claim ownership only of the small red and black bag, and not the black book bag. Finally, the jury was erroneously charged that it could consider the prior acts evidence for multiple improper reasons. As a result, the evidence was not so overwhelming, and the improper other acts evidence was not so marginal, to render it highly probable that the error did not contribute to the verdict. See *Sloan*, 351 Ga.

44

App. at 211-212 (2) (f); accord *Brown*, 303 Ga. at 164 (2); *Thompson*, 302 Ga. at 542 (III) (A). We therefore reverse Wright's convictions on this basis.

3. Wright also contends that the evidence was insufficient to support his convictions. We disagree.[20]

"When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Galvan v. State*, 330 Ga. App. 589, 592 (1) (768 SE2d 773) (2015) (citations and punctuation omitted); see also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "[I]t is the sole province of the trier of fact to resolve conflicts in the testimony," and this Court neither weighs the evidence nor determines witness credibility. *Evans v. State*, 315 Ga. App. 863, 864 (729 SE2d 31) (2012). "[A]s long as there is some competent evidence, even though contradicted, to support each fact

---

[20] As discussed below, although we reverse Wright's convictions on evidentiary grounds, we address his challenge to the sufficiency of the evidence for purposes of determining that he may be tried again. See *Finney v. State*, 311 Ga. 1, 18 (3) (b), n. 30 (855 SE2d 578) (2021); *Cowart v. State*, 294 Ga. 333, 344 (6) (751 SE2d 399) (2013).

necessary to make out the State's case, the trier of fact's verdict will be upheld." Id. (citation and punctuation omitted).

Wright's appellate challenge here is limited to his claims that insufficient evidence connected him to the black book bag (and, necessarily, its contents) and that what little evidence was presented on that issue was contradictory.[21] It was the sole province of the jury, however, to resolve the conflicts in the evidence, assess the investigator's and Wright's credibility, and determine whether Wright possessed the black book bag and its contents.[22] See *Browner v. State*, 296 Ga. 138, 141 (1) (765

---

[21] Our rulings in Division 1 dispose of Wright's assertion that we should not consider his statements claiming ownership of the black book bag and its contents in determining the sufficiency of the evidence.

[22] Although Wright makes no argument in this regard, for purposes of deciding that he may be tried again, we conclude that the evidence was sufficient for the jury to find that he intended to distribute the "spice." See, e.g., *Taylor v. State*, 344 Ga. App. 439, 441 (1) (810 SE2d 333) (2018) (intent to distribute could be inferred from, inter alia, the amount of drugs, a law enforcement officer's testimony that the volume of drugs was consistent with distribution rather than personal use, and the presence of a scale); *Thomas v. State*, 321 Ga. App. 214, 215-216 (1) (741 SE2d 298) (2013) (intent to distribute could be inferred from, inter alia, the volume of drugs, how they were concealed and packaged, and the fact that the defendant "lacked a device for using the drugs"), disapproved in part on other grounds by *Langley v. State*, No. S21G0783, 2022 Ga. LEXIS 14, at *13 (2), n. 7 (Feb. 1, 2022); see also *Latta v. State*, 341 Ga. App. 696, 698-699 (1) (802 SE2d 264) (2017) (the intent with which an act is done is "peculiarly a question of fact" for determination by the jury and may be inferred from circumstantial evidence); *Woods v. State*, 302 Ga. App. 891, 893 (1)

SE2d 348) (2014) ("[r]esolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court," and the trier of fact is not required to accept the defense presented by the defendant). We find no error in this regard, as a result of which the State may retry Wright if it so chooses. See *Finney v. State*, 311 Ga. 1, 18 (3) (b), n. 30 (855 SE2d 578) (2021); *Cowart v. State*, 294 Ga. 333, 344 (6) (751 SE2d 399) (2013).

*Judgment reversed. McFadden, P. J., concurs and Rickman, C. J., dissents.*

---

(691 SE2d 913) (2010) (a jury may infer intent based on all of the circumstances "connected with the act for which the accused is prosecuted") (citation and punctuation omitted).

A21A1655.  WRIGHT v. THE STATE.


RICKMAN, Chief Judge, dissenting.

Because the probative value of the other acts evidence was not substantially outweighed by its unfair prejudice, I respectfully dissent.

I agree with the majority's conclusion that the other acts evidence was relevant to show Wright's intent.[1] The majority errs, however, in its application of the Rule 403 balancing test.

"Prior to the enactment of the new evidence code, Georgia had no direct statutory equivalent to Rule 403, but case law on the issue generally required that a

---

[1] Because the majority determined that the evidence was relevant to prove intent, it was unnecessary to analyze whether the evidence was relevant to prove knowledge and lack of mistake. See *Bradshaw v. State*, 296 Ga. 650, 657 n. 5 (3) (769 SE2d 892) (2015).

trial court merely balance the probative value of evidence with its prejudicial effect without requiring that the objecting party establish substantial prejudice." (Footnote omitted.) *Williams v. State*, 328 Ga. App. 876, 879 (1) (763 SE2d 261) (2014). "In stark contrast, the plain meaning of OCGA § 24-4-403's text makes clear that the trial court may only exclude relevant evidence when its probative value is 'substantially outweighed' by one of the designated concerns." Id.

"[T]he exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." (Citation and punctuation omitted.) *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016). "Obviously, the reason for such caution is that relevant evidence in a criminal trial is 'inherently prejudicial,' and, as a result, Rule 403 permits exclusion only when unfair prejudice substantially outweighs probative value." (Citation and punctuation omitted.) *Williams*, 328 Ga. App. at 879 (1). "The primary function of Rule 403, then, is to exclude evidence of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) Id. at 879-880 (1).

"The Rule 403 analysis requires a common sense assessment of all the circumstances surrounding the extrinsic act and the charged offense including the prosecutorial need for the extrinsic evidence, the overall similarity between the

2

extrinsic act and the charged offense, and the temporal remoteness of the other act." (Citation and punctuation omitted.) *Hargrove v. State*, 361 Ga. App. 106, 116 (2) (c) (ii) (863 SE2d 364) (2021). "In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." Id.

Here, the prior drug conviction is very similar to the charged offense and thus highly probative to show Wright's intent to both possess and distribute the charged controlled substances. See *Hargrove*, 361 Ga. App. at 116 (2) (c) (iii). Regarding prosecutorial need, the State had to overcome Wright's defense that he did not possess the bag containing the drugs. Wright's sole contention at trial was that he was merely present at the scene, there were no witnesses who testified that the bag was Wright's, and Wright argued that he never made the statements admitting ownership.

The majority confuses the prosecutorial need analysis by concluding that due to the amount of drugs, the packaging, and scales, a juror would not conclude that the perpetrator did not intend either to possess the drugs and gun or to distribute the drugs. The question is not whether some hypothetical perpetrator intended to possess the drugs, but whether Wright, who maintained he was merely present at the scene of a crime with many other people, intended to possess the bag of drugs. To answer that

3

specific question, the prosecutorial need of a prior conviction for a similar crime was high. "Thus, the State's need for evidence that [Wright] had committed similar crimes was significant, which weighs in favor of admission under Rule 403." *Hargrove*, 361 Ga. App. at 116-117 (2) (c) (iii). Additionally, the crimes only took place four years apart and thus were not temporally remote from each other.

Accordingly, keeping in mind that the exclusion of evidence under Rule 403 is an extraordinary remedy to be used only sparingly, I disagree with the majority's conclusion that the trial court abused its discretion in finding that the probative value of Wright's convictions was substantially outweighed by unfair prejudice. See *Hargrove*, 361 Ga. App. at 117 (2) (c) (iii) (holding that the trial court did not abuse its discretion in finding the probative value of the defendant's prior drug convictions was not substantially outweighed by unfair prejudice in defendant's trial for other drug related offenses); *Moton v. State*, 351 Ga. App. 789,793-794 (833 SE2d 171) (2019) (same); *Gunn v. State*, 342 Ga. App. 615, 620-622 (1) (804 SE2d 118) (2017) (where defendant failed to establish that the trial court abused its discretion for admitting a prior drug conviction for the purpose of intent).

4